PEARCE ET AL. *v.* DILL.

[No. 17,885.   Filed December 14, 1897.]

LIS PENDENS.—*Banks and Banking.*—Where a bank pays out money on deposit after notice of a suit contesting the ownership thereof, it does so at its peril.  *pp. 141, 142.*

TRUSTS.—*Recovery of Trust Funds Wrongfully Diverted.*—Whenever any property or fund in its original state has been impressed with the character or nature of a trust, no subsequent change of its original form or condition can devest it of its trust character so long as it is capable of being identified, and the beneficiary thereof may pursue and reclaim it regardless of the form into which it may have been changed, provided it has not gone into the possession of a *bona fide* purchaser without notice.  *p. 142.*

SAME.—*Recovery of Trust Funds Wrongfully Diverted.*—*Identification.*—Where trust funds consisting of money have been wrongfully diverted, the *cestui que trust* may reclaim same, although not able to trace the identical coins or bills, where the identity thereof as a fund can be ascertained.  *p. 142.*

SAME.—*Recovery of Funds Wrongfully Diverted.* — *Options.*— *Banks and Banking.*—Funds on deposit in bank which have been checked out by the husband of the depositor in settlement of illegal deals in options, and placed to the credit of the broker, may be recovered from the bank by the depositor, where the husband had no authority to draw checks on such deposit except in transaction of the depositor's business and for her use, of which the broker and bank had notice, and where the bank had notice of the nature of the deals for which the checks were given.  *pp. 143, 144.*

SALES.—*Options.*—*Gaming.*—*Bucket Shops.*—Sales of products which, by the mutual understanding of the buyer and seller, are not to be delivered, but when the time fixed for delivery arrives settlement is to be made upon the basis of the market value of such products, understood by the parties to be a speculation solely on chances, are illegal and void.  *p. 144.*

PRACTICE.—*Harmless Error.*—*Statute Construed.*—A judgment which is manifestly right under the evidence will not be reversed on account of erroneous intervening rulings.  *p. 145.*

From the Montgomery Circuit Court. *Affirmed.*

*Benjamin Crane, Albert B. Anderson, Charles Johnston* and *William H. Johnston*, for appellants.

*G. W. Paul* and *Henry D. Van Cleave*, for appellee.

JORDAN, J.—By this action the appellee invoked the equity powers of the court to restore to her a certain amount of money which is charged to have been unlawfully diverted by her agent and trustee and placed to the account of appellant, Pearce, in the First National Bank of Crawsfordsville, Indiana, a co-appellant herein. The complaint is in four paragraphs. The second substantially alleges that during the months of May, June and July, 1895, the plaintiff, Aravella Dill, was the owner of a certain amount of money, to wit, $5,000.00, on deposit in said bank in her own name, and that she had a pass book given her by the bank, showing her said deposits as entered therein, and that her husband, E. S. Dill, had the custody of said pass book as her trustee and agent; that the defendant, Alfred Pearce, had and occupied a room in the city of Crawfordsville, Indiana, for the purpose of gaming and wagering in margins and option deals, and for the purpose of betting and wagering on the market price of wheat, corn, oats, and other produce; that the defendant had his said room and place of business supplied with a telegraph instrument, blackboards, etc., and other paraphernalia usually belonging to a "bucket shop," for the purpose of gaming and wagering upon the market price of wheat, corn, oats, and other products; that in fact the room and place of business was a "bucket shop" operated for the purpose of gaming and wagering on the rise and fall of the market price of wheat and other cereals. It is further shown by the averments of the complaint that her said husband and agent, E. S. Dill, patronized the defendant, Pearce, in said business, by betting and wagering with him on the rise and fall of the market price of wheat, corn, oats, and pork; that Pearce would sell to said Dill, and the latter purchase from him, option deals in wheat, corn, oats, and pork, to be set-

tled, and which in fact were settled, on the rise or fall in the future in the price thereof in the Chicago market; that in making said gaming deals with Pearce, said E. S. Dill, in order to pay the margins and losses therein, drew checks on the defendant, the bank, in favor of Pearce, and signed the plaintiff's name thereto as follows: "Aravella Dill, per E. S. Dill;" that these checks were delivered by Dill to Pearce and the latter endorsed the same and presented them to said bank and it honored each of them and gave Pearce credit in his account with the amount of each check and charged the amount against plaintiff's account in the bank, thereby transferring from her account or deposit in the bank to Pearce's account or deposit therein the sum of $4,700.00, all of which it is alleged was unlawful and without her knowledge or consent. It is further alleged that the plaintiff had authorized the bank to honor checks drawn by her said husband, E. S. Dill, in her name in the transaction of her business, and that the bank is made a party defendant for the reason that it has the custody of said money or funds. It is alleged that the checks were invalid and did not authorize the bank to transfer her money to the account of Pearce, and that each of the defendants knew that E. S. Dill was her agent, and that all of said deals by him in "margins" and "futures" were made in his own name and for himself, and that he had no right or authority from plaintiff to draw said checks for said purpose, and that the money so taken from plaintiff's account by the means aforesaid was taken from her without any consideration whatever, and without her knowledge or consent. It is also averred that Pearce is insolvent and that the sum of $2,677.38 of plaintiff's said funds is still in the bank credited to the account of the defendant, Pearce, and that the defendants have and hold said sum of money

Pearce *et al. v.* Dill.

as her trustee and for her use and benefit, and that in justice and equity she has the right to have the same restored and transferred to her bank account; and she asks the court to compel the defendants to restore the money to her bank account, etc., and for all other proper and equitable relief. The other paragraphs of the complaint allege facts which are similar to those set forth in the second.

A trial by the court resulted in a finding in favor of the plaintiff, and it was adjudged and decreed that at the time this suit was commenced there was on deposit in the said bank, the sum of $2,677.77 in the name of the defendant Pearce, and of this amount the sum of $1,607.00 was wrongfully transferred from the bank account of the plaintiff to that of the defendant, Pearce, by means of the checks set forth in the complaint, and that the defendant bank was the custodian of said fund and money, and each of the defendants then held and had, and now has and holds said sum of $1,607.00 in trust for the plaintiff as for money had and received to her use, and the same belongs to her in her own right, etc.; and it was further ordered and decreed that the said defendants pay into court for the use of the plaintiff, said sum of $1,607.00 within ten days, etc. A separate motion for a new trial was filed by each of the defendants, and overruled, and each separately assign errors in this court.

No question is raised in regard to the sufficiency of the complaint, appellants basing their claims for a reversal of the judgment upon the insufficiency of the evidence, and other alleged erroneous rulings of the trial court. Accepting as we must, the evidence which the trial court deemed most worthy, and it sustains, among others, substantially the following facts: The appellee is the wife of E. S. Dill, and in the spring and summer of 1895, at different times, she deposited in

her own name in the First National Bank of Craw-
fordsville, Indiana, money owned and held by her to
the amount of $5,000.00 and over. At the time
she opened her account with the bank, it was under-
stood between her and the bank that the latter
might honor checks drawn by her husband, E. S.
Dill, in her name. She received a pass book from
the bank, which she placed in the custody of her
husband, who was acting as her agent in transacting
her business, and as such he had authority to draw
checks on her deposits in her name, for her use.
Appellant Pearce operated and carried on in the
city of Crawfordsville, Indiana, what is commonly
known and denominated a "bucket shop" and was
engaged in dealing in "margins," "futures" and "op-
tions" in wheat, corn, oats, and pork. The deals made
by persons who patronized Pearce in his said business
depended upon and were settled on the future rise or
fall of the market price of the products sold and pur-
chased, at the city of Chicago, Illinois, at the time
fixed for their delivery. No grain or other products
were delivered by Pearce to his customers, nor were
any sold or purchased with such intention. After Mrs.
Dill deposited her money in the bank, her agent, E. S.
Dill, transacted and carried on with Pearce a series of
deals by buying "options" or "futures" in wheat, corn,
oats, and pork. Dill had no use for any of such pro-
ducts, and it was understood by him and Pearce, and
so intended by both, that no wheat or other products
sold by Pearce to Dill were in any manner to be deliv-
ered to him, but that the settlements therefor were to
be made on the future rise or fall of the market price
of the same at the city of Chicago. From time to time,
during these transactions between Dill and Pearce,
the former, without the knowledge or consent of the
appellee, and without any authority from her, drew

checks in her name against her said bank account in favor of Pearce, to pay him for the "futures" so purchased, and to pay for losses sustained by Dill in such deals.   To all of these checks the name of appellee was signed by her husband without her knowledge, consent, or authority, as follows: "Aravella Dill, by E. S. Dill."   Appelee had nothing to do in regard to any of these transactions between her husband and Pearce, and the same were wholly between the two latter.   Pearce knew that the money in the bank upon which the checks were drawn in his favor belonged to Mrs. Dill, and was on deposit therein in her name.   He presented the checks so received from Dill from time to time to the bank, endorsed by him, and it honored the same and gave him credit on his account or bank deposit for the amount of each and all of the checks, and charged the same to the account of the appellee, which resulted in the bank transferring in the aggregate from Mrs. Dill's deposit or account to that of Pearce's the amount of $4,700.00.   Pearce and E. S. Dill, at and before the commencement of this action were both insolvent.   There is also evidence tending to show that the bank, through its officers, had knowledge of the business in which Pearce was engaged at the time it honored the checks in question, and that they were given in payment and settlement of the said deals in "futures."   At the time of the beginning of this suit Pearce had on deposit in the bank, in his own name, $2,677.77, which amount was composed in part of the funds of appellee, at least of an amount equal to that recovered by her.   It will be seen that no rights of innocent parties under the facts are involved. The only interest which the bank can be said to have in the controversy is that of having the question over the title or right to the money judicially determined between Mrs. Dill and Pearce. If the bank, as claimed,

paid out part of the money in dispute, on the checks of Pearce after the commencement of this action, it did so at its peril, and must suffer the consequences, so far, at least, as appellee is concerned.

The insistence of counsel for appellee is that E. S. Dill, the agent of their client, committed a breach of trust and wrongfully diverted the money of his principal into the hands of the appellant, Pearce, and that she has the right, under the facts and the law applicable thereto, to trace it into Pearce's bank account, to which it had been transferred, and have it restored to her by the court as her property. The authorities generally affirm and support the right of a *cestui que trust* to pursue and recover trust funds wrongfully diverted, where their identity has not been lost, and where they have not passed into the hands of parties for value without notice of the trust. Whenever any property, or fund, in its original state, has once been impressed with the character or nature of a trust no subsequent change of its original form, or condition, can devest it of its trust character, so long as it is capable of being identified, and the beneficiary thereof may pursue and reclaim it, regardless of the form into which it may have been changed, provided it has not gone into the possession of a *bona fide* purchaser without notice. All that the law contemplates by requiring the property or fund to be identified is a substantial identification, and, in case the fund consists of money, the *cestui que trust* may reclaim it, although not able to trace the identical coins or bills, so long as its identity as a fund can be ascertained. It is a well-settled principle that the abuse of a trust fund by a trustee, or fiduciary, confers no right upon him, nor upon those who claim in privity with him. Where the fund has been misapplied, or converted into other

property, or mixed with the funds of the trustee, or of those claiming through him, and can be traced and identified, courts will attribute the ownership to the *cestui que trust,* and will not permit the wrongful act of the trustee, or fiduciary, in mixing the trust fund with his own funds, or those of a third party, to defeat a recovery, but, in general, in such cases, will separate the trust fund from the others with which it has been commingled, and restore it to the beneficiary entitled to receive it.   *Bevis* v. *Heflin,* 63 Ind. 129; *Bundy, Rec.,* v. *Town of Monticello,* 84 Ind. 119; *Riehl* v. *Evansville Foundry Association,* 104 Ind. 70; *Orb* v. *Coapstick,* 136 Ind. 313; *Shepard, Tr.,* v. *Meridian Nat'l Bank, post,* 532.  See, also, the many leading authorities collected in a note to the case of *Union National Bank* v. *Goetz,* 138 Ill. 127, 32 Am. St. 119, on p. 125, 27 N. E. 907.

The rule is, when the right to pursue and reclaim a trust fund exists, that the true owner thereof, when the fund is traced to the possession of another and identified, has the right to have it restored to him, not as a debt due and owing to him, but for the reason that it is his property, wrongfully diverted and withheld; and it can make no difference in regard to the right of recovery in such a case, whether the fund has been traced into the possession of a single individual, or into the hands of a firm or association composed of many persons, or into the form of a bank account.  *In re Hallett's Estate and Knatchbull* v. *Hallett,* L. R. 13 Ch. Div. 696; *Englar* v. *Offutt,* 70 Md. 78, 16 Atl. 497, 14 Am. St. 332; *National Bank* v. *Insurance Co.,* 104 U. S. 54.

The evidence, as we have seen, discloses that Dill was the agent of the appellee, and only authorized to draw checks upon her money in the bank, for her use, or in her business.  The relation between him and the

appellee was of a fiduciary character, and in the use of her money in this respect he occupied the position of a trustee, and in the event that he wrongfully diverted or misapplied such funds, the rules relating to the pursuit and recovery of a trust fund apply. *Riehl* v. *Evansville,* etc., *Association, supra; Roca* v. *Byrne,* 145 N. Y. 182, 45 Am. St. 599, 39 N. E. 812.

The evidence fully proves that the appellant Pearce was operating what is commonly denominated a "bucket shop;" in fact, this is established by his own admissions on his cross-examination.   He was engaged in conducting the illegal business of selling "futures" or "options."   The products which he pretended to sell to his customers, he did not have at the time, and it was mutually understood and intended by both parties that the wheat or corn which was claimed to be sold and purchased was not to be delivered, but when the time fixed for its delivery arrived, the market value at Chicago of such cereals should constitute the basis upon which the settlements would be made.   As the market price would rise or fall, there would be a loss or gain to the purchaser. The deals or transactions were understood to be a speculation solely on chances, and were in contravention of, and hostile to public policy, and therefore illegal.   Such transactions are of like character and akin to bets made on a game of poker or faro, and are equally as uncertain and hazardous.   The business or operations of the "bucket shop," have been the source of much evil.   Embezzlements and other crimes on the part of public officers, and bank officials, having the custody of money belonging to others, have been in the past some of the evil fruits directly traceable to dealing in futures in these institutions; and the question of prohibiting such transactions or business, as it is generally conducted, merits the consideration of

the legislature.   Such dealings as those in which Pearce and the husband of the appellee engaged have repeatedly been condemned as illegal by the decisions of this court.   *Whitesides* v. *Hunt,* 97 Ind. 191; *Sondheim* v. *Gilbert,* 117 Ind. 71; *Davis* v. *Davis,* 119 Ind. 511; *Plank* v. *Jackson,* 128 Ind. 424.

To summarize, in conclusion, the agent of the appellee is shown to have abused his trust by wrongfully diverting the money of his principal into the hands of Pearce, for an illegal consideration.   The latter accepted the checks in controversy with knowledge that the funds upon which they were drawn belonged to appellee, and that Dill, with whom he dealt, was misappropriating the money.   By the means of these checks, which, in his hands at least, were tainted with the illegality of the transactions in the settlement of which they were drawn, appellant procured the bank to swell his account with the money belonging to appellee.   Under the facts certainly it must be said that the equities are all with the appellee, and neither of the appellants are in a position to successfully assail her right to recover.

Some other alleged errors are discussed by appellants' counsel, but the judgment is so manifestly right upon the evidence, that even if we should concede that the intervening rulings of which they complain were erroneous, they would not result in a reversal.   See section 670, Burns' R. S. 1894 (658, R. S. 1881).

The judgment is affirmed at the cost of the appellants.