**Jane HICKS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff,**

**First National Bank of Fremont, Campbell & Fetter Bank, Farmers State Bank of LaGrange, Joseph I. Hicks, Jane Hicks and Timothy Loomis, Appellees–Defendants.**

No. 76A05–9309–CV–324.

Court of Appeals of Indiana,
Fifth District.

June 20, 1994.

Transfer Denied Nov. 3, 1994.

---

John M. Haecker, Auburn, for appellant.

Frank J. Gray, Robert L. Nicholson, Beckman Lawson Sandler Snyder & Federoff, Fort Wayne, for appellee.

SHARPNACK, Chief Judge.

Jane Hicks appeals the trial court's judgment in the interpleader action for distribution of robbery proceeds filed by the State of Indiana through the prosecuting attorneys of Steuben County, Noble County, and La-Grange County. We affirm.

Hicks raises five issues for our review, which we consolidate and restate as:

1. whether the trial court erred in failing to comply with the requirements of the forfeiture statute;

2. whether the trial court erred in imposing a constructive trust on the funds seized from the Hickses' bank accounts;

3. whether the trial court erred in determining that the seized funds were proceeds of the robberies; and

4. whether the trial court erred in permitting interpleader.

The facts most favorable to the judgment are as follows. On August 24, 1990, Joseph Hicks, Hicks' husband, robbed the Farmers State Bank branch in Stroh, Indiana (La-Grange County) of $14,013.00. On October 6, 1990, Joseph Hicks robbed the Campbell & Fretter Bank in Kendallville, Indiana (Noble County) of $52,304.52. On October 22, 1990, Joseph Hicks robbed the First National Bank of Fremont in Ashley, Indiana (Steuben County) of $71,396.00. In the investigation of the robberies, the police recovered approximately $85,000.00 hidden behind a wall in the Hicks home, $4,415.00 in a filing cabinet in the Hicks home, and $3,400.00 from Timothy Loomis, Hicks' accomplice. In addition, pursuant to court order, police seized bank accounts held by Joseph and Jane Hicks. The Hickses' checking and savings accounts at The Dana Federal Credit Union contained a total of $9,172.34, and an account at Angola State Bank contained $26,318.68. On November 14, 1990, the amount of $13,818.68, which had been deposited in the form of a check for settlement of an insurance claim, was returned to Joseph Hicks, in care of his attorney, from the funds attributable to the Angola State Bank.

On December 13, 1991, a joint complaint for interpleader was filed by the State of Indiana through the prosecuting attorneys of Steuben, Noble, and LaGrange counties. The complaint named Joseph and Jane Hicks, Timothy Loomis, and each of the banks from which the funds had been stolen as defendants, and requested that the defendants be required to file an answer setting forth any interest they had in the funds seized by the police. Pursuant to a court order entered that day, the amounts recovered plus interest accrued, totalling $114,950.59, were transferred to the clerk of Steuben Circuit Court.

On May 11, 1992, Joseph Hicks died. On September 29, 1992, the three defendant banks filed a joint stipulation agreeing to share pro rata in the distribution of the seized funds. The trial was held on February 11 and 23, 1993. On April 29, 1993, the court entered its findings of fact, conclusions of law, and judgment. The court found that the three banks were entitled to a judgment against the monies held by the clerk, to be distributed as stipulated. The court found that Loomis and the Hickses had proven no valid claim to any of the funds held by the clerk.

■ We first note that the trial court entered special findings, not on the request of either of the parties, but on its own motion. When a trial court makes specific findings on its own motion, the general judgment will control as to the issues upon which the court has not found and the specific findings control only as to the issues they cover. *In re Snemis* (1991), Ind.App., 575 N.E.2d 650, 652. We may not reverse the trial court's findings in such circumstances unless they are clearly erroneous. *Id.;* Ind.Trial Rule 52(A). Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them, and we will neither reweigh the evidence nor judge witness credibility. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320. However, the general judgment will be affirmed if it can be sustained upon any legal theory by the evidence introduced at trial. *Snemis,* 575 N.E.2d at 652.

I

■ Hicks first argues that the court erred in distributing the seized funds because the State failed to comply with the requirements of Ind.Code § 34-4-30.1-3, the forfeiture statute. Hicks is mistaken in characterizing the seizure of the funds as a forfeiture.

The forfeiture statute serves to create "an economic disincentive to engage in proscribed behavior by subjecting to forfeiture those items 'traceable' to criminal activity." *Caudill v. State* (1993), Ind.App., 613 N.E.2d 433, 437. The statute is aimed primarily at the drug trade, and it enables the State to recover law enforcement costs, with any excess being transferred to the State Treasurer for deposit into the common school fund. *Id.* at 436; I.C. § 34-4-30.1-4(d). In the present case, the State has made no claims on the seized funds. The court ordered the entire amount of the recovered funds to be distributed to the banks robbed by Joseph Hicks.

The funds were seized as evidence in the criminal investigation of the robberies, and the funds were properly distributed pursuant to I.C. § 35-33-5-5, which governs the disposition of property seized as a result of a search or an arrest.

"(c) Following the final disposition of the cause at trial level or any other final disposition:

(1) Property which may be lawfully possessed shall be returned to its rightful owner, if known. If ownership is unknown, a reasonable attempt shall be made by the law enforcement agency holding the property to ascertain ownership of the property."

I.C. § 35-33-5-5(c)(1). This statute sustains the trial court's continuing jurisdiction over property seized in the course of a criminal investigation. *Conn v. State* (1986), Ind. App., 496 N.E.2d 604, 609. It codifies the common law rule requiring the return of such property to its rightful owner unless the property has been destroyed because its possession would be unlawful. *Id.* In the present case, the State, through the prosecuting attorneys of three counties, instituted the interpleader action in a reasonable attempt

to ascertain the rightful owner of the funds recovered by the police in their investigation of the bank robberies. The trial court did not err in distributing the seized funds through an interpleader proceeding.

## II

■ Hicks next argues that the trial court improperly imposed a constructive trust upon the funds seized from the Hickses' bank accounts.

A constructive trust

"arises in cases where the transaction involved is tainted by fraud, actual or constructive. In such cases, in order to prevent the wrongdoer from reaping a benefit from his fraud, a court of equity will construct a trust such as equity and good conscience requires in order to do justice to the parties affected by the fraudulent transaction.... It is the fraud or undue influence connected with the original transaction which justifies the court in constructing a trust and holding the wrongdoer responsible as a trustee *maleficio.*"

*Westphal v. Heckman* (1916), 185 Ind. 88, 97, 113 N.E. 299, 302. Hicks argues that a constructive trust is imposed on property "only where actual or constructive fraud is found, and a confidential or fiduciary relationship has been breached." *Comfax v. North American Van Lines* (1992), Ind.App., 587 N.E.2d 118, 126. Hicks is correct to the extent that Indiana law has thus far set forth the circumstances under which a constructive trust may be imposed. However, "[m]any attempts have been made to define a constructive trust," *Brown v. Brown* (1956), 235 Ind. 563, 135 N.E.2d 614, 616, and we find that the court's imposition of a constructive trust in the present case, though unprecedented in Indiana case law, is consistent with the legal principles underlying the constructive trust.

The Second Restatement of Trusts defines a constructive trust as

"a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property."

Restatement, Second, Trusts § 1 comment (e). Thus, a constructive trust may be imposed appropriately where property is wrongfully gained or held. Fraud is but one means by which property may be wrongfully gained; robbery is certainly another.

Courts in other jurisdictions have supported the imposition of a constructive trust based on the criminal misappropriation of funds, even where a confidential or fiduciary relationship did not exist between the thief and his victim.[1] The Indiana Supreme Court has held that a constructive trust may be imposed upon property purchased with embezzled funds, but the court addressed this issue in the context of a breach of trust.

"Where an agent, in violation of his trust, uses the money of his principal, the law implies a trust in favor of the principal; and to enforce the trust thus implied equity will subject the property purchased to the claims of the principal as against either a volunteer or a fraudulent grantee....

Cases are cited holding that where an agent embezzles money from his employer, and invests it in property, the principal cannot follow the employer, because the remedy against the agent is by a criminal prosecution. We have no doubt that these cases were not well decided.... The fact

---

1. *See, e.g., Corporation of the President of the Church of Jesus Christ of Latter-Day Saints v. Jolley* (1970), 24 Utah 2d 187, 467 P.2d 984 ("Where one has stolen or embezzled the money or property of another, he obtains no title whatsoever. A constructive trust may be impressed upon it in his hands; and equity may continue the trust effective against *any* subsequent transferee, unless transferred to a bona fide purchaser...."), and *Costell v. First National Bank* (1963), 274 Ala. 606, 150 So.2d 683, 686 ("[I]f the funds of one person are wrongfully used by another in the purchase of real estate in his own name, or in the improvement of his real estate, a constructive trust in the property purchased or improved will arise in favor of the one whose money was wrongfully used, whether the relation at the time ... was a fiduciary one, or that of employer and employee, or whether they stood to each other as strangers"). *See also* 76 Am.Jur.2d *Trusts* § 231 (1992), and Bryant, J.A., Annotation, *Imposition of Constructive Trust in Property Bought With Stolen or Embezzled Funds,* 38 A.L.R.3d 1354 (1971).

that the agent may be criminally prosecuted does not affect the right of the principal to get back his money. With quite as much reason might it be urged that the principal could not take from the embezzler the money if found on his person because he can be punished by a criminal prosecution, as to urge that the principal cannot follow the trust because the embezzler is liable to be punished by a prosecution at the instance of the state. There is no conceivable reason why the wronged employer may not secure his money and the embezzler be also punished."

*Riehl v. Evansville Foundry Ass'n* (1885), 104 Ind. 70, 3 N.E. 633, 634. We see no significant distinction, however, between the embezzler and the thief in this context, and we agree with the Nebraska Supreme Court, which stated, when confronted with the question of whether a police officer may restore money procured in a bank robbery to its rightful owner,

> "It is alleged that the burglars are insolvent. The recovery of a judgment against them was consequently a secondary matter. They had in their possession only a portion of the amount stolen, when searched, and as to that plaintiff was seeking redress by enjoining the policemen from transferring it to others and by establishing a constructive trust.... Defendants were no less accountable because their possession grew out of a felony. Confidential relations are not essential to the jurisdiction of a court of equity to declare and enforce a trust with respect to stolen property. It may be traced through the thief into a different form of property and restored to the beneficial owner. In contriving means to cheat an owner out of his property a thief should not be permitted to outstrip the courts in discovering a remedy to restore it when found."

*Aetna Indem. Co. of Hartford, Conn. v. Malone* (1911), 89 Neb. 260, 131 N.W. 200 (*quoted with approval* in *Pioneer Mining Co. v. Tyberg* (9th Cir.1914), 215 F. 501, 504). We see no reason to deny the imposition of a constructive trust in cases where money is stolen outright rather than through a breach of trust. Where stolen funds have been used to purchase property or securities, or, as in the instant case, have been deposited into a bank account, the constructive trust is a useful equitable device for facilitating the return of the stolen funds. In the present case, following the bank robberies, substantial sums of cash were deposited into the three bank accounts held jointly by Joseph and Jane Hicks. The trial court's imposition of constructive trusts on these accounts, with the Hickses as trustees *maleficio* and the defendant banks as beneficiaries, was an appropriate means to prevent unjust enrichment and to facilitate the return of the stolen money.

### III

■ Hicks argues next that the court improperly presumed that the funds in the Hickses' bank accounts were the proceeds of the bank robberies. Specifically, Hicks contends that the trial court improperly shifted to her the burden of proving ownership of the funds. Hicks cites *State v. Poxon* (1987), Ind.App., 514 N.E.2d 652, for the proposition that the State must overcome the presumption that the person in possession of funds at the time of seizure is the rightful owner. *Id.* at 654. Hicks is correct in asserting that the burden of proof was on the State to show that the funds were stolen. Hicks' reliance on *Poxon* is misplaced, however. In *Poxon,* no evidence of any kind was presented to the court to show that Poxon procured the funds in question illegally; in the present case, Joseph Hicks was convicted of bank robbery.

The record shows that a total of $137,713.52 was stolen by Joseph Hicks from the three defendant banks. As noted above, police seized approximately $89,415.00 in cash from the Hicks home, and approximately $3,400.00 was recovered from Loomis, leaving unaccounted for approximately $45,000.00.

The chronology of the October robberies and subsequent deposits into the Hickses' bank accounts is revealing. On October 6, 1990, Joseph Hicks made off with $52,304.52 in cash from the Campbell & Fetter Bank. On October 10, 1990, $5,400.00 in cash was deposited into the Hickses' joint account at the Angola State Bank, and between October

10 and 15, 1990, a total of $13,600.00 in cash was deposited into the Hickses' accounts at the Dana Federal Credit Union. On October 22, 1990, Joseph Hicks robbed First National Bank of Fremont of $71,396.00 in cash. On October 24, 1990, $7,000.00 in cash was deposited into the Hickses' joint account at the Angola State Bank. Thus, a total of $26,000 in cash was deposited into the Hickses' bank accounts following the October robberies.

Rather than indulging a presumption that the funds in the bank accounts were the stolen funds, the court properly weighed the claims of Hicks, who argued that the money in the bank accounts represented the proceeds of babysitting, rental income, and gambling winnings, among other things, against the claims of the defendant banks. As noted above, we will neither reweigh the evidence nor judge witness credibility, *DeHaan,* 572 N.E.2d at 1320, and the judgment will be affirmed if it can be sustained upon any legal theory by the evidence introduced at trial. *Snemis,* 575 N.E.2d at 652. We find the court's judgment to be sustained by the evidence and by equitable principles of trust law regarding the tracing of wrongfully acquired funds that have been commingled with the funds of the trustee.

> "It is an ancient rule of the common law that the owner of a chattel who has been wrongfully deprived of its possession, may follow it and recover it, no matter what changes and transmutations it may have undergone and however much it may be increased in value by the expenditure of labor upon it; provided only that the product is still a chattel and composed of the original materials. Thus, if logs be sawed into lumber and the lumber be made into an article of furniture, the owner of the logs may recover the article of furniture.

> \* \* \* \* \* \*

> The true owner of property has the right to have his property restored to him, not as a debt due and owing, but because it is his property wrongfully withheld. As between the *cestuis que trust* and the trustee and all parties claiming under the trustee, except purchasers for value and without notice, all the property belonging to the trust, however much it may have been

changed in its form or its nature or character, and all the fruits of such property, whether in its original or altered state, continue to be subject to and affected by the trust.

> It was formerly held that these rules came to an end the moment the means of ascertaining the identity of the trust property failed. In the case of trust moneys commingled by the trustee with his own moneys, it was held that money has no earmarks, and when so commingled the whole became an indistinguishable mass and the means of ascertainment failed.

> But equity, adapting itself to the exigencies of such conditions, finally determined that the whole mass of money with which the trust funds were commingled should be treated as a trust. And if the trustee deposited the trust funds with his own funds in bank, and then drew upon the commingled funds, he was presumed to have drawn out his own funds first, and that the remaining funds belonged to the trust. It is not to be presumed that the trustee would commit a wrong and use the trust funds when he had moneys of his own idle in the bank. The above rules applied only to express trusts.

> But many cases arose in which it was impossible to trace the trust funds beyond the point of conversion. The means of ascertainment failed. And many cases arose which were not express but resultant or constructive trusts. . . . It was [thus] held that if money be received by a person in a fiduciary character, though not as a technical trustee, and he pays it into his own account in bank, the person for whom he received the money might follow it and have a charge on the balance in the bank as shown by the account."

*Windstanley et al. v. The Second Nat'l Bank of Louisville, Ky.* (1895), 13 Ind.App. 544, 546–48, 41 N.E. 956; *see also Pearce v. Dill* (1897), 149 Ind. 136, 48 N.E. 788, and *Terre Haute Trust Co. v. Scott* (1932), 94 Ind.App. 461, 181 N.E. 369.

In the present case, the proceeds of the robberies were held in constructive trust by the Hickses as trustees for the benefit of the defendant banks. Consistent with Indiana

law, withdrawals and payments from the bank accounts were deemed by the court to have been made from the Hickses' own funds, and the remainder, up to the amount unaccounted for, was deemed to be the stolen funds. Of the amounts remaining in the accounts at the time the funds were seized, the court designated a total of $21,672.34 to be made subject to constructive trusts in favor of the defendant banks. The court did not err in so doing.

■ Hicks also argues that the court erred in finding that the $4,415.00 seized from a filing cabinet in the Hicks home was traceable to the robberies. Hicks argued at trial that the cash had been saved from babysitting, rental income, gambling income, her mother's estate, reimbursement of funeral expenses, the sale of horses, income from her husband's roofing business, and insurance proceeds from an automobile accident. Hicks testified that there may have been up to $20,000.00 in the filing cabinet on October 10, 1990, and that the bank deposits she made on and subsequent to that date were funds taken from the filing cabinet. The trial court found Hick's testimony concerning the origin of the funds in the filing cabinet to be unworthy of belief. Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them, and we will neither reweigh the evidence nor judge witness credibility. *De-Haan,* 572 N.E.2d at 1320. As it is reasonable to infer from the evidence that the cash seized from the filing cabinet was part of the stolen funds, we conclude that the court did not err in so finding.

IV

■ Hicks argues lastly that the trial court erred in permitting interpleader. Specifically, Hicks contends that the interpleader complaint was deficient because it did not allege that the person seeking interpleader is or may be exposed to double or multiple liability, as required by T.R. 22(C). We disagree.

The joint complaint for interpleader was filed by the State of Indiana through the prosecuting attorneys of three counties to require the defendant banks, the Hicks, and Loomis to set forth their interests in the seized funds. Paragraph 2 of the Complaint states, "Some or all of the above-named defendants may claim an interest in the funds to be held by the Steuben County Clerk as set forth above." Record, p. 5. This statement asserts the State's potential multiple liability for distribution of the seized funds to the rightful owners. We find this to be a sufficient declaration of exposure to multiple liability to satisfy the requirements of T.R. 22(C).

Accordingly, the trial court's judgment is affirmed.

**AFFIRMED.**

STATON and BARTEAU, JJ., concur.