**Patrick A. TRACY, Appellant–Defendant Below,**

v.

**STATE of Indiana, Appellee.**

No. 29A02–9409–CR–554.

Court of Appeals of Indiana.

Sept. 27, 1995.

Rehearing Denied Nov. 3, 1995.

Transfer Denied Jan. 9, 1996.

Andrew C. Maternowski, Indianapolis, for appellant.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

SULLIVAN, Judge.

Patrick A. Tracy (Tracy) pleaded guilty[1] as a result of his arrest after a controlled drug buy in which he exchanged $26,000 for twenty-six pounds of marijuana. The trial court denied Tracy's Petition for Return of Property, claiming that he was entitled to the $26,000 and to other money seized from him.

We affirm.

On June 26, 1991, Detective Thomas Ferguson (Ferguson), an undercover State Trooper, and a confidential informant met Tracy and an associate, Donald, in a motel room. Tracy and Donald examined twenty-six pounds of marijuana which Ferguson had offered for sale. The four men then spent several moments counting out $26,000, which Tracy had carried into the room in a black compact disc case.

In return, Ferguson handed Tracy the twenty-six pounds of marijuana. As they left the room, Tracy carried the marijuana and Donald carried the black case. As Tracy and Donald walked down the hall away from the motel room, they were apprehended by waiting officers. An additional amount of money[2] was recovered from the compact disc case upon their arrest.[3]

---

1. Although the Information discloses that Tracy was initially charged with two counts, Conspiracy to Deal in Marijuana, I.C. 35–48–4–10 and I.C. 35–42–5–2, and Dealing in Marijuana, I.C. 35–48–4–10, the record in this proceeding does not reveal the charge to which Tracy pleaded guilty.

2. The exact amount the police seized at the time of the arrest is not stated in Detective Ferguson's police report. However, the Federal Drug Enforcement Administration's Declaration of Forfeiture lists the entire amount forfeited as $29,-

126.04. Therefore, we assume that anything over the $26,000 was money taken upon the arrest.

3. The State, at oral argument, made the assertion that, when the money was counted out of the black case, several thousand dollars remained in it. It assumed, as will we, that the money remaining in the case must constitute the additional money recovered upon Tracy's arrest and to which he now lays claim.

By July 1, 1991, a money order for the amount of $28,940.53 had been purchased.[4] The controlled sale had been engineered by the Indiana State Police in conjunction with the Hamilton County Drug Task Force. Agent Howard Oberst of the Federal Drug Enforcement Agency (DEA) was also present when Tracy was arrested, although the record is unclear as to the capacity in which he acted. As a result of Oberst's presence, however, the money order was released to the DEA, which had accomplished an administrative forfeiture of the whole of that money by September 27, 1991.[5] In turn, the DEA distributed forty percent of the proceeds of its forfeiture, or approximately $11,000, to the Hamilton County Drug Task Force, apparently in exchange for its part in Tracy's arrest. This distribution was accomplished by September 27, 1991.

On December 19 of the same year, Tracy pleaded guilty. He received his Certificate of Final Discharge on March 4, 1994, after which he filed his Petition for Return of Property, which the trial court denied. Upon appeal from that ruling, Tracy claims the State is obligated to return the entire amount to him because it never initiated proceedings to forfeit the money.

■ In his argument, Tracy contends that the State, in releasing the money to the DEA, wholly disregarded the statutory procedures enumerated in I.C. 35–33–5–5 (Burns Code Ed.Repl.1994), by which it may accomplish forfeiture of property seized pursuant to an arrest or a search warrant. He contends that, since the property remained under the jurisdiction of the court, state law enforcement agencies were obligated to procure a court order in order to dispose of that money.

The State, in turn, contends it is not obligated to return any portion of the $29,126.04. Because the controlled sale was the result of a collaboration between state law enforcement and the DEA, it asserts that the DEA had the jurisdictional capacity to seize the money, subjecting it to federal forfeiture proceedings.

Initially, we find it useful, due to the particular facts at issue, to divide the money to which Tracy contends he is entitled. The respective amounts—$26,000 and the additional money—were each obtained from Tracy at separate points in the controlled sale incident and in a dissimilar manner; thus, the $26,000, which was actually used in the controlled sale is separate from that money which remained in the compact disc case at the point Tracy was arrested. Thus, the issue remains: is Tracy entitled to recover either portion of the money?

The statute upon which Tracy relies to facilitate the return of the money to him, I.C. 35–33–5–5, reads:

"(a) All items of property seized by any law enforcement agency as a result of an arrest, search warrant, or warrantless search, shall be securely held by the law enforcement agency under the order of the court trying the cause, except as provided in this section.

(b) Evidence that consists of property obtained unlawfully from its owner may be returned by the law enforcement agency to the owner before trial. . . .

(c) Following the final disposition of the cause at trial level or any other final disposition:

(1) Property which may be lawfully possessed shall be returned to its rightful owner, if known. If ownership is unknown, a reasonable attempt shall be

---

4. We note here that the fact that a money order existed at all may be deduced only from Detective Ferguson's reference to it, and from counsels' assertions. The record contains neither a receipt nor a copy of the actual money order. Furthermore, although the amount listed in Detective Ferguson's report is slightly less than the $29,126.04 said to have been recovered from the controlled buy and from Tracy's possession, we must assume that the money order represents the disputed money.

5. As previously noted, the amount forfeited by the DEA was greater than that actually received by it through the money order released by the Indiana State Police. The DEA's Declaration of Forfeiture states the amount forfeited as $29,126.04, while the State shows the amount alternately as $28,940.53 and $28,904.53.

made by the law enforcement agency holding the property to ascertain ownership of the property. After ninety (90) days from the time:

> (A) The rightful owner has been notified to take possession of the property; or

> (B) A reasonable effort has been made to ascertain ownership of the property;

the law enforcement agency holding the property shall, at such time as it is convenient, dispose of this property at a public auction."

We find it unnecessary to address the issue in terms of whether the State was required to hold the money until Tracy's final disposition as per I.C. 35–33–5–5. The reason for such a disposition is that the foremost object of Tracy's claim—$26,000—falls outside the purview of the statute. Tracy proposes that we interpret the statute to require that any money seized by law enforcement, acquired not only through an arrest or execution of a search warrant, but also received in the course of a criminal investigation, be returned to its rightful owner following final disposition of the cause. Indeed, the Fifth District of the Court of Appeals broadly interpreted I.C. 35–33–5–5 to apply to such property: "[the statute] sustains the trial court's continuing jurisdiction over property seized in the course of a criminal investigation." *Hicks v. State* (1994) 5th Dist.Ind. App., 635 N.E.2d 1151, 1153, *trans. denied* (citing *Conn v. State* (1986) 4th Dist.Ind. App., 496 N.E.2d 604, 609, *trans. denied,* in which items were seized in a search which exceeded that authorized by the warrant).

We base our conclusion upon the fact that the $26,000 was not "seized" at all within the definition of the statute. Here, there is no question but that the exchange which took place was a wholly consensual arrangement between Ferguson and Tracy. The facts indicate that Tracy appeared in the motel room, with substantial forethought and planning, fully intending to exchange that money for contraband. He then voluntarily con-

veyed possession of the money and in return received from Detective Ferguson, *quid pro quo,* twenty-six pounds of marijuana. We cannot equate such a consensual exchange with a "seizure," as contemplated by the statute. *See Herald v. State* (1987) 2d Dist. Ind.App., 511 N.E.2d 5, 9, *trans. denied* (evidence which is voluntarily given to an officer during a controlled buy is not received as the result of an unlawful seizure); *see also Schwartz v. State* (1978) 177 Ind.App. 258, 379 N.E.2d 480, 485. Thus, as I.C. 35–33–5–5 applies only to seizures, it would appear that neither the Indiana State Police nor the Hamilton County Drug Task Force were required by the statute to comply with the procedural requirement, to wit: that it hold the $26,000 until final disposition of the cause.

Further, even were we to conclude that the circumstances amounted to a "seizure," we find that such a broad interpretation of the statute, which would apply the procedures of I.C. 35–33–5–5 to all property seized as the result of a "criminal investigation," would constitute a judicial re-write of the statutory language. The statute does not require that all property seized as the result of a "criminal investigation" be returned. It requires that very specific property—that seized "as a result of an arrest, search warrant, or warrantless search"—be returned. *See* I.C. 35–33–5–5(a). Thus, to the extent that the *Conn* and *Hicks* courts have interpreted the statute's language more broadly than we deem necessary or appropriate, we decline to adopt that interpretation.[6]

 The fate of the excess money recovered by the Indiana State Police, over the $26,000, requires additional consideration. Because the excess money was recovered in the course of Tracy's and Donald's arrests, it was undoubtedly subject to the procedural mandates of I.C. 35–33–5–5, which requires that the State hold the seized property until final disposition, and that it return property which may be lawfully owned to its rightful owner, if known. Nevertheless, we will overturn the trial court's decision—that Tracy

---

**6.** In considering this issue, we note that our General Assembly could have provided adequate procedures concerning forfeiture of property seized from citizens by law enforcement officials. The legislature in its discretion may remedy any such perceived inadequacies.

was not entitled to return of his property—if the decision is clearly erroneous, that is, if the decision cannot be sustained upon any theory the evidence supports. *State v. Poxon* (1987) 3d Dist.Ind.App., 514 N.E.2d 652, 654, *trans. denied.*

■ Here, even had the State held the money until final disposition, Tracy was still compelled to prove, by a preponderance of the evidence, that he was the "rightful owner" entitled to return of the money due to the State's failure to instigate forfeiture proceedings. *Poxon, supra,* 514 N.E.2d at 653. He has failed to do so.

The facts, as enumerated by Ferguson's police report, disclose that, at best, Tracy exercised joint control over the money with Donald, his associate.[7] The State, at oral argument, intimated that the additional money was recovered from the black compact disc case. Although Tracy initially extracted the black case from the trunk of his car, and carried it to the motel room, Donald, the confidential informant, and Ferguson all participated in dividing its contents. Indeed, while Tracy carried the marijuana out, Donald carried the case holding the money. In short, Tracy has not demonstrated that he was either in exclusive possession of the seized funds at the time of his arrest, or that he is the rightful owner of the funds.

We hold that the State is not required to return any portion of the funds to which Tracy claims entitlement.

The judgment of the trial court is affirmed.

HOFFMAN, J., concurs.

FRIEDLANDER, J., concurs in part and dissents in part with opinion.

FRIEDLANDER, Judge, concurring in part and dissenting in part.

I agree with the majority that the $26,000 used by Tracy to purchase the marijuana was not "seized" within the meaning of IC 35–33–5–5 inasmuch as Tracy had already exchanged the money for the marijuana. Tracy no longer possessed the money and thus was not entitled to return of the money under any legal theory. I disagree with the majority, however, with respect to the money found on Tracy's person after the arrest.

IC 35–33–5–5(a) requires that "all items of property seized by a law enforcement agency as a result of an arrest" shall be held by the agency subject to the court's authority. IC 35–33–5–5(c)(1) provides that the court alone has the jurisdiction to order disposition of the property and that this is to be done at the conclusion of the criminal proceedings. Neither mandate was observed in the instant case. It is undisputed that all of the seized money, including the money taken from Tracy's person, was given by the Indiana State Police to the DEA months in advance of the final disposition of the charges against Tracy. This was done by purchasing a money order in the amount of all of the money seized and giving the money order to the DEA. The transfer was accomplished without a court order.

The facts of the instant case are substantially similar to those in *Scarabin v. Drug Enforcement Admin.,* 966 F.2d 989 (5th Cir. 1992). In *Scarabin,* the defendant's house was searched pursuant to a search warrant issued by the local parish sheriff's office. The search produced "evidence of drugs and $12,360 in cash." *Id.* at 991. Three days after the search, the sheriff's office purchased a cashier's check using the seized money and turned the check over to the DEA for civil forfeiture under federal law. This was done "without the knowledge, much less the authority, of the state court." *Id.* Shortly thereafter, the DEA returned ninety percent of the money to the sheriff's office under a federal statute permitting the DEA to return forfeited property to state or local law enforcement agencies which participated in the seizure or forfeiture of the property. The Fifth Circuit colorfully and accurately described this as "a handoff from the Sheriff's Office to the DEA, followed by the lateral back from the DEA to the Sheriff's Office, a 'flea-flicker' play." *Id.*

Record at 21.

---

7. The report also discloses that a third interested party may exist: Michael, the "money man."

The court concluded that the initial transfer of the funds from the sheriff's office to the DEA was contrary to state forfeiture law requiring that disposition of seized money be determined by a state court. The court stated:

> "From the moment of seizure the state district court had exclusive control over the *res* by virtue of issuing the search warrant that procured the seized funds and never relinquished that control to the DEA or any other agency or person. A federal agency cannot obtain jurisdiction over the *res*—and thus cannot find the *res* administratively forfeit—when a state court obtains jurisdiction first and never relinquishes that jurisdiction." *Id.* at 993.

In the instant case, jurisdiction over the money seized from Tracy's person vested in the state court pursuant to IC 35–33–5–5(a) because it was seized by a state law enforcement agency as a result of an arrest. I can find no indication of record that the Hamilton County court which had jurisdiction over Tracy's criminal case ever issued an order authorizing disposal of the money seized from Tracy's person. Rather, the transfers from the Indiana State Police to the DEA and from the DEA back to the Hamilton County Drug Task Force were accomplished without benefit of authorization, or perhaps even knowledge, of the court having statutory jurisdiction over the money. In addition to the lack of notification and court approval, the "flea-flicker" play transfer from the State to the DEA and back to the State is all the more unacceptable in the instant case in view of the DEA's relative lack of involvement in the sting operation resulting in Tracy's arrest. The precise nature of the DEA agent's participation is not clear, but a review of the record convinces me that the law enforcement endeavor which culminated in Tracy's arrest can only be characterized as a state operation, and not a DEA operation. The DEA agent's role seems to have been minor at best.

I am persuaded by the reasoning of courts that have set aside the transfer for federal civil forfeiture proceedings of money seized by state or local law enforcement officials if the applicable state laws regarding seized property were ignored or circumvented. *See, e.g., Scarabin, supra; United States v. One 1979 Chevrolet C–20 Van,* 924 F.2d 120 (7th Cir.1991); *Johnson v. Johnson,* 849 P.2d 1361 (Alaska 1993). At the time the money was transferred to the DEA, Tracy's criminal action was ongoing and jurisdiction over the money remained with the Hamilton County court before whom the matter was pending. I find the *Scarabin* court's conclusion equally applicable here:

> "Finding that [the seized money] was never out of the legal control of the state court and thus was never in the possession of the federal government, we conclude that the DEA could not have found it forfeit. The administrative forfeiture of which the DEA informed [the defendant] is a non-entity. If the DEA still insists on bringing forfeiture proceedings against [the defendant's] funds, it must first seek a turn over order from the state court, or wait until that court relinquishes control over the *res* and then proceed anew...." *Scarabin, supra,* at 995.

I would reverse the trial court with respect to the money found on Tracy's person upon my conclusion that federal civil forfeiture proceedings pertaining to that money were invalid because they were commenced without authority of the court then having jurisdiction over the money.[8]

---

**8.** Finally, I note that although we address herein the narrow question of whether forfeiture proceedings must be authorized by the state court having jurisdiction over the money, there are broader implications to the majority's holding today. The United States Supreme Court recently decided that forfeiture of property under 21 U.S.C. § 881 for drug offenses constitutes " 'payment to a sovereign as punishment for some offense,' [citation omitted], and, as such, is subject to the limitations of the Eight Amendment's Excessive Fines Clause." *Austin v. United States* (1993), —— U.S. ——, ——, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (quoting *Browning–Ferris In-*

*dustries v. Kelco Disposal, Inc.* (1989), 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219). Article I, Section 16 of the Indiana Constitution contains Indiana's equivalent of the Eighth Amendment's guarantee against excessive fines. The Eighth Amendment of the federal constitution defines the minimum threshold of protection against government action in that regard, and the state constitution may afford greater protection, but not less. Therefore, forfeitures for drug offenses in Indiana are subject to the excessive fines limitations guaranteed by both the Eighth Amendment of the United States Constitution and Article I, § 16 of the Indiana Constitution. In the instant case, the money was administratively forfeited by the DEA. It is beyond debate that a court of law is better suited than an administrative agency to make the necessary determinations regarding the constitutionality of a forfeiture under the Eighth Amendment and Article I, § 16. This is a compelling reason to require, as does IC 35–33–5–5(c)(1) in my view, that a state court oversee the disposal of property seized in conjunction with a drug arrest and subject to civil forfeiture under relevant state and federal statutes.