John W. HERALD, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 38A02–8610–CR–359.

Court of Appeals of Indiana,
Second District.

July 29, 1987.

Rehearing Denied Oct. 30, 1987.

---

William D. Bright, Ludy & Bright, Portland, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Defendant-appellant John Herald appeals his convictions of burglary and theft.

We affirm.

At approximately 12:44 a.m. on September 3, 1985, the day following Labor Day, Officers Bruce Hosier and Robert Sours were patrolling the streets of Portland, IN, when they noticed a vehicle parked behind the library. The officers observed the vehicle was unlocked, the windows were down, and the keys were in the ignition. The backseat contained three pairs of basketball shoes which were unlaced and still had new shoe paper wrapping stuffed inside them. The officers transmitted the vehicle's license plate number to the police department and were informed Rita Leudeke was the vehicle's owner. The officers removed the keys from the ignition and closed the vehicle's windows.

Suspecting a burglary may have occurred, Officer Hosier went on foot to check the businesses in the immediate area while Officer Sours checked the outlying area in his police vehicle. As Officer Hosier was returning to the unattended Leu-

deke vehicle, he observed a man, later identified as defendant Herald, walk slowly toward the United Telephone Building, approach the door of the building, and attempt to open it. When the door would not open, Herald backed away from the door and proceeded down an alley. Officer Hosier confronted Herald, who appeared to be intoxicated, and questioned him about what he was doing in the area. Herald advised Hosier he was enroute to the home of a friend. Officer Hosier observed Herald holding a metallic object in his left hand and questioned him about it. Herald handed the object, a set of keys, to Officer Hosier. Herald advised Officer Hosier he had found the keys at the corner of the United Telephone Building. Officer Sours joined Herald and Hosier at the scene and asked Herald if he knew anything about the vehicle parked behind the library. Herald responded he did not and it was not his vehicle. Officer Sours advised Herald to proceed to his friend's house. Herald left the area.

The officers resumed their patrol and subsequently observed Herald sitting on the steps in front of a building in the business district. Because the unattended Leudeke vehicle was the focus of their attention, the officers returned to it and conducted a surveillance. The officers observed Herald approach the vehicle, enter it for approximately a minute, and then exit the vehicle. At that point, another vehicle pulled into the area. Herald conversed with the driver of the other vehicle for a few minutes and then returned to the Leudeke vehicle. He entered the vehicle, immediately exited, and proceeded to walk toward the business district. Officer Hosier followed Herald by vehicle while Officer Sours attempted to follow Herald on foot.

While following Herald, Officer Sours glanced through a window of the "Flower Nook Shop" and saw a cash register lying on the floor. Officer Sours radioed Officer Hosier to come to the Flower Nook because he believed a burglary had occurred. Officer Sours proceeded toward the back of the Flower Nook Shop where he observed a cash drawer on the ground and Herald standing 15 or 20 feet from the Flower Nook's rear entrance. Sours asked Herald what he was doing. Herald answered he was looking for his car keys. Officer Hosier arrived at the scene and assumed custody of Herald while Officer Sours entered the flower shop. Officer Sours discovered that a wood panel, with three footprints on it, had been kicked out of a door, and the office and showroom areas of the shop were in disarray. At this point, the police officers arrested Herald for public intoxication and, when he resisted being handcuffed, for resisting arrest.

After transporting Herald to the county jail, the officers returned to the flower shop and met with its owner who identified the cash box as his and the keys given to Officer Hosier by Herald as the keys to the flower shop cash register. Subsequently, Officer Sours submitted the wood door panel, Herald's boots, and a fingerprint lifted from the cash register to the State Police Laboratory. The results of the analysis were inconclusive.

A jury convicted Herald of theft and burglary. The trial court ordered Herald to pay a 10,000 dollar fine and sentenced him to concurrent six and one-half years on the burglary charge and three years on the theft charge.[1]

Herald appeals, presenting the following issues, which we have restated and consolidated:

(1) Whether the trial court erred in denying Herald's motion to suppress; and

(2) Whether the evidence is sufficient to sustain Herald's convictions of burglary and theft; and

(3) Whether the trial court erred in the imposition of Herald's sentence.

### DISCUSSION

#### I.

Herald contends the trial court erred in overruling his several motions to suppress

---

1. The presumptive sentences for these offenses are five years and two years respectively. *See* Ind.Code Ann. §§ 35–50–2–6, 35–50–2–7 (Burns 1985).

evidentiary materials which he claims were the fruits of an initial illegal seizure or otherwise illegally seized.

### A.

First, Herald argues the police seizure of the keys in the ignition of the unattended Leudeke vehicle was illegal;[2] and, consequently, the admission of the flower shop keys, the flower shop cash drawer, the flower shop door panel, the packing material in which the door panel was packaged at the State Police Laboratory, Herald's boots, and photographs of footwear impressions on the flower shop door panel was erroneous because these exhibits "flowed from and [were] ... obtained as the direct result of ..." the illegal seizure of the vehicle keys. Appellant's Brief at 15. Consequently, according to Herald, these exhibits are inadmissible "fruits of the poisonous tree."

■ The Fourth Amendment restraint against unreasonable searches and seizures extends not only to evidence directly obtained, but also to derivative evidence. Derivative evidence, secured as a result of information and leads obtained from an illegal search constitutes "fruit of the poisonous tree" and is inadmissible in a criminal prosecution. *Eg., Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634. The "fruit of the poisonous tree" doctrine has no application, however, when the derivative evidence has an "independent source," *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, when the "connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint,'" *Wong Sun*, 371 U.S. at 487, 83 S.Ct. at 417 (quoting *Nardone v. United States* (1939), 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307), and, when the challenged evidence would inevitably have been properly obtained. *See Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377.

In *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634, the Indiana Supreme Court discussed the allocation of burdens of proof and proceeding when a court is confronted with issues raised by the "fruit of the poisonous tree doctrine." The court stated the defendant must first prove an illegal search took place and that the evidence offered was a "fruit" of that search. Then the State has the burden of proving the challenged evidence had an independent source, 323 N.E.2d at 642, *see Nardone v. United States* (1939), 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, or to establish the attenuation of the initial taint or the applicability of another exception to the general rule of exclusion. *See McCormick on Evidence* § 176, at 505 (E. Cleary ed. 3d ed. 1984).

■ Applying this methodology to the present case, Herald had the burden of proving the seizure of the vehicle keys was unlawful and that the challenged evidence was available to the State as a factual result of the police officers' illegal activity. Without considering the validity of Herald's claim that the seizure of the automobile keys was illegal, we find Herald did not sustain his burden of proving a factual relationship between the officers' alleged illegal seizure of the automobile keys and acquisition of the challenged evidence. At the suppression hearing Herald merely assumed the existence of the required nexus and failed to present any evidence on the issue. On appeal he fails to suggest a theory of factual causation. This court will not hypothesize or speculate on any arguable nexus between the alleged illegal seizure and the challenged evidence. Hence, the trial court did not err in admitting the items of evidence which Herald challenged as being "fruits of the poisonous tree."

### B.

■ Next, Herald argues the trial court erred in admitting into evidence, over his objection, the cash register keys on the

---

**2.** The vehicle keys were not offered into evidence. Thus, the legality of their seizure is relevant only insofar as the other challenged exhibits were fruits of that seizure.

ground the police exceeded the scope of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.[3] Herald asserts that although Officer Hosier had the authority to conduct a limited search of Herald in an attempt to locate weapons, he did not have authority to seize and keep the keys which were neither "fruits of a crime nor contraband." Appellant's Brief at 18.

The facts do not support Herald's claim of error. The record reveals Officer Hosier stopped Herald due to his reasonably suspicious conduct. During the Officer's conversation with Herald, Herald *voluntarily* gave the key to Officer Hosier. Thus, the cash register keys were not obtained as a result of an unlawful seizure. *See Schwartz v. State* (1978), 177 Ind.App. 258, 379 N.E.2d 480; *Boys v. State* (1973), 261 Ind. 413, 304 N.E.2d 789.

### C.

■ Herald further contends the court erred in admitting his boots into evidence. Herald complains the seizure of the boots was made without a warrant and cannot be justified as a warrantless search incident to a custodial arrest. In making this argument, Herald focuses on the fact there was at least an hour's delay from the time he was incarcerated until the time the boots were seized and argues that exigent circumstances were not present to excuse the police officers' failure to obtain a warrant.

In *United States v. Edwards* (1974), 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771, the Supreme Court discussed the issue of delay between an arrest and a seizure. Edwards was arrested shortly after 11:00 p.m., charged with attempting to break into the city's post office, and then taken to the local jail. Contemporaneously or shortly thereafter, an investigation at the crime scene gave the police probable cause to believe Edwards' clothing was material evidence of his guilt in the crime for which he was arrested. The next morning when substitute clothing was available for Ed-

wards, the clothing he wore at the time of his arrest was taken for laboratory analysis. The analysis revealed paint chips on the clothes which matched samples taken from the window where the attempted entry was made. Edwards' clothing and the laboratory results were admitted at trial over Edwards' objection that the seizure of the clothing was invalid under the Fourth Amendment. The Supreme Court expressly approved the warrantless seizure of Edwards' clothing:

> "This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention.... [i]t is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest."

415 U.S. at 805–06, 94 S.Ct. at 1238.

The facts of the instant case are sufficiently similar to *Edwards* to warrant the conclusion the seizure of Herald's boots was lawful. Herald was taken to the Jay County Jail at approximately 1:30 a.m. The officers immediately returned to the scene of the burglary. There the officers identified the keys Herald had given to Officer Hosier as the keys to the flower shop's cash register. At this point, when probable cause existed to believe Herald's boots had made the footprints on the flower shop's door panel, Officer Sours radioed to the jail to secure Herald's boots. Although testimony was not presented as to the time the jailor seized the boots from Herald, Officer Sours testified he received the boots at the jail between 2:30 and 3:00 a.m. A reasonable inference from this testimony is that the jailer seized the boots from Herald sometime before 2:30 to 3:00 a.m., and thus no later than one and one-half hours from the time Herald was initially taken to the jail. This was not an unrea-

---

**3.** Herald also argues the trial court erred in failing to suppress unspecified oral statements he made to the police officers. However, at trial, Herald did not object to the admission of any statements he made at the time of this encounter. Thus, he has waived any error with respect to this issue. *Lindsey v. State* (1985), Ind., 485 N.E.2d 102.

sonable seizure. *See also United States v. Oaxaca* (9th Cir.1978), 569 F.2d 518; *United States v. Maslanka* (5th Cir.1974), 501 F.2d 208; *United States v. Caruso* (2nd Cir.1966), 358 F.2d 184.

## II.

█ Herald contends the circumstantial evidence presented by the State at trial is insufficient to establish, beyond a reasonable doubt, his identity as the perpetrator of the subject crimes.[4] When a challenge to the sufficiency of the evidence is raised, the reviewing court will not weigh the evidence or judge the credibility of the witnesses. Instead, the court considers the evidence most favorable to the State, along with all reasonable inferences to be drawn therefrom. If there is evidence of probative value from which the jury could find the defendant guilty beyond a reasonable doubt, the defendant's conviction will be upheld. *Ward v. State* (1982), Ind., 439 N.E.2d 156.

The evidence most favorable to the State reveals Herald was in possession of keys from the flower shop's cash register shortly after the shop was broken into and entered. The keys were in the cash register when the flower shop was secured by the owner. Although Herald offered the explanation that he found the keys near the United Telephone Building, Officer Hosier, who was observing Herald as he approached the building, stated he never saw Herald bend over and pick anything off of the ground. It is the jury's function to assess the credibility of Herald's explanation, and we will not judge their determination on appeal. There is sufficient evidence to support Herald's convictions of theft and burglary.

## III.

Herald contends the sentence imposed is manifestly unreasonable and inappropriate to the particular offenses and offender. Specifically, he argues the trial court failed to find extant mitigating factors and failed to make a proper record evidencing the sentence was "based upon a consideration of the facts of the specific crime[s] and the relation of the sentence imposed to the objectives to be served by [the] ... sentence." Appellant's Brief at 30.

█ The record belies Herald's contentions. In making its sentencing determination, the trial court specifically noted Herald's age and alcohol consumption at the time of the offense. Nevertheless, the trial court determined these circumstances were not mitigating factors in Herald's particular case. In so doing, the trial court was well within the exercise of its discretion. *Lamotte v. State* (1986), Ind., 495 N.E.2d 729.

Additionally, the trial court noted as aggravating factors that Herald had been convicted of a class C felony on January 31, 1984 and was on parole for this offense at the time the subject crimes were committed. The court found Herald had a history of prior criminal and delinquent activity. The court also expressed its belief Herald was not a proper candidate for probation because he was likely to break probation.

█ This sentencing statement indicates a consideration of the facts of the subject crimes and the character of the defendant. Further, the sentencing statement adequately provides the reasons and logic supporting Herald's enhanced sentence. *See Smith v. State* (1986), Ind., 491 N.E.2d 193. Under the circumstances of this case, we cannot say no reasonable person could find the sentence appropriate to the particular offenses and offender, and thus, Herald's sentence is not manifestly unreasonable. Ind.R.App.Rev.Sen. 2(2).

Judgment affirmed.

SULLIVAN and STATON, JJ., concur.

---

4. Herald also asserts the trial court erred in denying his motion for judgment on the evidence at the close of the State's case. Any error in ruling on a motion for judgment on the evidence is waived when the defendant presents evidence after the motion is overruled. *Dziepak*

*v. State* (1985), Ind., 483 N.E.2d 449; *Howard v. State* (1985), Ind., 481 N.E.2d 1315. Here, Herald presented evidence after the denial of his motion for judgment on the evidence; therefore, this issue is waived.