STATE of Indiana, Appellant
(Plaintiff Below),

v.

Vonda JORGENSEN, Appellee
(Defendant Below).

No. 73A01–8804–CR–117.

Court of Appeals of Indiana,
First District.

Aug. 9, 1988.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, John W. Mead, Pros. Atty., Salem, for appellant.

Roger D. Davis, Corydon, Kris Meltzer, Bate, Harrold & Meltzer, Shelbyville, for appellee.

ROBERTSON, Judge.

Appellant State of Indiana brings this interlocutory appeal from an order granting appellee-defendant Vonda Jorgensen's suppression motion.

We affirm.

On the night of October 16, 1986, Vonda Jorgensen called her in-laws Oliver and Betty Jorgensen to tell them her husband,

Michael Jorgensen, had been shot. The elder Jorgensens lived down the street from their son and daughter-in-law. After they arrived, Vonda told Oliver that Michael had been asleep in the bedroom and she had been attending to their baby in another bedroom when Michael was shot. Oliver and Betty went to the bedroom where Oliver found Michael dead. Oliver announced he would call the police, and Vonda helped him locate the number by referring to the front of the telephone book.

Deputy Sheriff James Watson arrived first in response to the dispatch. Oliver admitted Watson into the house and showed Watson where Michael's body was. At that time, Vonda was seated in the dining room. After ascertaining Michael was dead, Watson radioed for other units, the coroner and the prosecutor. State Trooper John Elmore arrived, and Vonda told him she had heard shots while attending the baby and had discovered Michael shot and the sliding glass door in the dining room open. Elmore related to Watson that earlier the previous evening, Elmore had responded to a call to the Jorgensen house where Vonda and Michael reported seeing a prowler outside their home.

Deputy Watson suggested to Vonda that she and Oliver go to the elder Jorgensen's home and wait until an officer arrived to interview her. He explained that there would be a lot of police officers, the coroner and technicians in her home and that they would be collecting evidence, taking photographs and searching the area. Vonda did not object at any time after being told the officers intended to search. Watson drove Vonda and Oliver to the elder Jorgensen's home. The search of Vonda's home was not begun until after she left. The officers admitted they did not ask Vonda's consent to search. They also did not ask Oliver's permission to search. At the time Vonda left, she was not a suspect.

A four-hour search of the house ensued and as a result of evidence discovered during the search, Vonda was implicated in her husband's murder.

Vonda filed her motion suppressing evidence of certain items seized in the search of her home. Included in these items was a Rugar .357 revolver found in a box inside a closet of the bedroom where the murder took place, a storage box containing ammunition, and handwritten notes of Vonda indicating her intent to divorce Michael. The court granted her motion, finding that Vonda had not consented to the search, that Oliver Jorgensen was not a proper person to give consent, and that the warrantless search was not justifiable. He also found that the inevitable discovery theory advanced by the State did not apply.

The sole issue on appeal is whether the trial court erred in granting Vonda's motion to suppress the evidence.

A search conducted without a warrant issued upon probable cause is *per se* unreasonable. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. This rule is subject only to a few established and well-delineated exceptions. *Id.* One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Id.; Harper v. State* (1985), Ind., 474 N.E.2d 508. When the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that the State demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. *Schneckloth, supra; Sims v. State* (1980), Ind., 413 N.E.2d 556.[1]

---

1. The *Schneckloth* court recognized that an individual's consent to a police-conducted search raises competing concerns: the legitimate need for such searches and the equally important requirement of assuring the absence of coercion. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2048. The court observed that consent searches are a valuable means of obtaining important evidence where police have some evidence of illicit activity, but lack probable cause to arrest or search. The police certainly had probable cause to search Vonda's house where her husband's body was discovered with two bullet wounds. The police in the instant case did not need to obtain consent for lack of probable cause to get a warrant.

Because the State bears the burden to show that the warrantless search fell within an exception to the warrant requirement, and the trial court here found against the State, the State is appealing from a negative judgment. *State v. Blake* (1984), Ind. App., 468 N.E.2d 548, 550. This court will accept the trial court's findings of fact and conclusions of law unless clearly erroneous, and will reverse the judgment only where the uncontradicted evidence will support no reasonable inference in favor of the ruling. *Id.*

The State justifies the warrantless search on Vonda's consent to the search as evidenced by her failure to object when Deputy Watson stated that police officers would be gathering evidence and searching the area. The State also relies on Oliver Jorgensen's failure to object as a basis for third-party consent. In the alternative, the State claims that because it would have discovered the evidence had it obtained a warrant, the inevitable discovery rule would validate the search.

█ As a preliminary matter, we note that the trial court found only that the four-hour search undertaken after the initial entry was unreasonable; in finding that the police "could determine whether a prowler was on or near the premises," it implicitly found that Watson's initial entry into the home without a warrant was reasonable. Neither party argues that the initial entry was unreasonable, and we find that under the authority of *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290, the police could make a prompt warrantless search of the homicide scene area to see if there were other victims or if a killer was still on the premises.

█ The operative facts concerning the four-hour search are undisputed. The police did not ask Vonda for permission to search. Neither did Vonda object when the police proposed to search. The essential issue we must decide, therefore, is whether Vonda consented to the search free of duress or coercion, by her failure to object to the suggested intrusion.

The Supreme Court in *Schneckloth* declined to place a burden on the State to show that it had informed the person of his right to refuse consent, or that the person knew he could refuse consent. Rather, whether valid consent was given is a question of fact to be determined from all the circumstances existing at the time of the search. *Schneckloth* 412 U.S. at 248–49, 93 S.Ct. at 2058–59.

█ Also, an express consent is not a requirement for a valid consent search. *Harper v. State* (1985), Ind., 474 N.E.2d 508, 512. The circumstances surrounding the search may demonstrate that the party involved implicitly gave consent, by word or deed. *Id.* In *Harper*, the officer conducting the warrantless search of the defendant's home could not recall whether the defendant's spouse had verbally assented to the search. On appeal, the appellate court upheld the trial court's finding that the search was consensual because the wife was present during the search, acquiesced in it, and assisted the officer by finding paper bags in which to place the items seized. *Harper, supra* at 512.

Courts from other jurisdictions also have found that the defendant consenting to the search displayed more than mere acquiescence to the stated intentions of the police. In *Lewis v. State* (1979), 285 Md. 705, 404 A.2d 1073, 1080, the defendant Lewis called police after discovering the bodies of his wife and daughter in their home. No search was undertaken at that time, but when Lewis was about to leave town to attend the funerals, the police informed him that it would be necessary, as part of the investigation, for the police to enter the house in his absence and "go through personal papers and things like that." Lewis did not expressly consent to this, but he also did not object. However, he arranged to leave his house key with a neighbor for the purpose of giving the police access. The high court affirmed the lower court's finding that consent was given, citing that Lewis had indicated an intention to cooperate with the police and then had left the key for police to use to enter the house. The court concluded this conduct went beyond mere acquiescence.

The Supreme Judicial Court of Maine had occasion to consider the consent of defendant in a case factually similar to the instant case in *State v. Fredette* (1979), Me., 411 A.2d 65. The police received two calls from Mrs. Fredette, who claimed her husband had been shot by an assailant who had left the home through a side entrance. She showed police to the bedroom where her husband lay wounded. The police told Mrs. Fredette that the premises were to be searched and that officers from other departments were being called for assistance. Mrs. Fredette did not object. While Mrs. Fredette was at the hospital, she asked police to let her know if they found anything in their search of the house. While the search was being conducted, she returned to the premises twice to obtain clothing. An accompanying officer inventoried the items she removed. She continued to ask for information about the progress of the search. Mrs. Fredette gave verbal consent to police to search her husband's truck. The appellate court affirmed the trial court's finding of voluntary consent, indicating that the defendant had called police, invited them into her home, and continually cooperated with the police as they conducted the search of her home. The appellate court expressly found that the propriety of the police's initial entry was not at issue; accordingly, it appears that the court based its justification for the ensuing search in part on Fredette's allowing the police into her home in the first place.

We can distinguish *Harper, Lewis* and *Fredette* from the case at bar, where the trier of fact ruled in favor of the defendant. In the instant case, Vonda did not manifest by word or deed her consent to the search. She in no way assisted in the search; in fact, she was not present. Also, her absence from her home was occasioned by Deputy Watson's suggestion. She did not inquire about the search's progress. She did not directly contact the police or let them into her home. In short, she merely acquiesced.

Not only do we find the above case authority distinguishable, we rely on authority which invalidates a consent search where the State has shown no more than the defendant's "mere acquiescence to a claim of lawful authority." *Bumper v. North Carolina* (1968), 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797. The consent in *Bumper* was not freely and voluntarily given because the grandmother of the petitioner had allowed the search in response to the police's assertion that they had a search warrant to search the house, when the warrant was not relied upon to justify the search. The officer in the case before us did not claim or intimate that he possessed a search warrant authorizing him to search. Nevertheless:

> The 'claim of lawful authority' referred to in *Bumper v. North Carolina* need not involve mention of a search warrant. The claim of such a right, though not expressly stated, is implicit when the police, instead of asking for permission to make the search, say they have come to search or that they are going to search.

W. LaFave, *Search and Seizure* 2d.ed. § 8, 2(a), at 179 (1987); citing *Amos v. United States* (1921), 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; *Johnson v. States* (1948), 333 U.S. 10, 68 S.Ct. 431, 92 L.Ed. 568.

We conclude that the trial court was correct in finding that the State had not met its burden of showing that Vonda had freely and voluntarily given her consent, free of duress or coercion. Deputy Watson's announced intention to search the area and collect evidence, met with Vonda's acquiescence, has the earmark of the situation described in *Bumpers:* "instinct with coercion."

■ We agree with the trial court that Vonda's father-in-law, Oliver, could not consent to a search of Vonda's home. Consent to search given by a third party having common authority over the premises is sufficient to justify a warrantless search. *Brooks v. State* (1986), Ind., 497 N.E.2d 210.

> Common authority depends on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has

the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Brames v. State* (1980), 273 Ind. 565, 406 N.E.2d 252.

The evidence showed only that Oliver and Betty Jorgensen possessed a key to Vonda's house, which they used to enter the house as a matter of convenience whenever the elder Jorgensens needed to get something for their grandchildren or to look after the house. We cannot fathom how possessing a key to someone's home for convenience's sake could constitute "joint access or control" of premises. Certainly, while the in-laws may have had a key to the house, there was no evidence that they enjoyed joint access or control over Vonda and Michael's bedroom, or a closet in that bedroom. We will not find that the search was valid on the basis of Oliver's consent, since he did not have authority to consent to a search of Vonda's home.

The trial court was also correct in finding that the inevitable discovery rule does not apply here. *See Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377. The State reasons that the police could have secured the premises and obtained a search warrant had Vonda not consented; thus, the gun and other evidence inevitably would have been discovered upon a lawful search warrant. Were this the rule, no warrantless search supported by probable cause would be invalid.

In *Nix v. Williams, id.*, statements made by the defendant which led police to the victim's body were tainted as the product of an illegal interrogation. The court held that if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received. *Id.* at 444, 104 S.Ct. at 2509. In *Nix*, the

government had shown that the volunteer search party looking for the victim had come within a short distance of the body and inevitably would have discovered it, allowing admission of evidence of the body's discovery and condition.

Accordingly, our courts have held that the "fruit of the poisonous tree" doctrine has no application when the derivative evidence would inevitably have been discovered. *Herald v. State* (1987), Ind.App., 511 N.E.2d 5, 8. Derivative evidence secured as a result of information and leads obtained from an illegal search constitutes fruit of the poisonous tree. *Id.*[2]

The evidence found in Vonda's house was not derivative evidence; rather it was itself the product of the illegal search. Therefore, the taint may not be removed even though this same evidence would have been discovered through lawful means.

The trial court did not commit error in ordering the evidence suppressed which was the product of the illegal warrantless search. Therefore, we affirm.

Judgment affirmed.

NEAL and HOFFMAN, JJ., concur.

---

**2.** The exclusionary rule applies not only to the illegally obtained evidence itself, but also to other incriminating evidence derived from the primary evidence. *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319.