Ryan LaMUNION, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 25A04–0006–CR–227.

Court of Appeals of Indiana.

Dec. 19, 2000.

---

James Korpal, South Bend, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Ryan LaMunion ("LaMunion") appeals his convictions of possession of cocaine,[1] a Class D felony, possession of a schedule II controlled substance,[2] a Class D felony, and possession of marijuana,[3] a Class A misdemeanor. We reverse.[4]

### Issue

LaMunion presents one issue for our review, which we restate as whether the trial court should have granted his motion to suppress evidence obtained during a warrantless search conducted after the premises were secured.

### Facts and Procedural History

On January 2, 1999, at approximately midnight, five individuals broke into the trailer home occupied by LaMunion and his girlfriend. Some of the intruders beat LaMunion while others pushed his girlfriend onto a couch and searched the trailer for drugs to steal. Eventually, LaMunion struggled free, grabbed a rifle, and fired a shot. The bullet struck and killed William Schmidt ("Schmidt"), one of the intruders. At that point, the other intruders fled.

Having no phone, LaMunion and his girlfriend asked a neighbor to call 911. Fulton County Police Officer Walker Conley, who arrived at 12:50 a.m., was the first to respond to the call. Thereafter, other state and county police responded, and LaMunion was taken to a hospital. Around 1:00 or 1:30 a.m., a deputy, who was going to transport LaMunion's girlfriend to the sheriff's department, was asked to obtain a search warrant for LaMunion's trailer.

Having not yet received any response regarding the effort to obtain a warrant by 3:30 a.m., the officers began searching the trailer. During the search, Indiana State Police Trooper Rick Grisel ("Grisel") lifted a mattress in LaMunion's bedroom and found a compact case beneath it. Thinking the compact might be drug paraphernalia, Grisel opened it and found a white residue on its mirror. The residue was later determined to be cocaine and methamphetamine. During the same search, marijuana was found in a silverware drawer in the kitchen. Although the search continued until around 5:00 a.m., a judge did not sign the search warrant until 4:57 a.m. Later that morning, LaMunion and his girlfriend gave their consent to search the trailer. However, the police did not enter the trailer again.

The State charged LaMunion with voluntary manslaughter, reckless homicide,

1. *See* IND.CODE § 35–48–4–6.

2. *See id.*

3. *See* IND.CODE § 35–48–4–11.

4. We heard oral argument of this case on November 16, 2000 at John Adams High School in South Bend, Indiana. We wish to thank the school's administration, staff, and students, particularly those students and teachers involved in the John Adams mock trial program. We also wish to commend counsel for their excellent presentations.

possession of cocaine, possession of a schedule II controlled substance, and possession of marijuana. LaMunion filed and the trial court denied a motion to suppress evidence of the compact case. A jury found LaMunion guilty of the three possession counts, but acquitted him of the other counts. We heard oral argument of LaMunion's appeal on November 16, 2000, in South Bend, Indiana.

### Discussion and Decision

LaMunion admits that the police were justified when, upon their arrival, they secured the crime scene by briefly looking for victims and perpetrators and collecting any evidence in plain view. However, he claims that the extensive warrantless search, which began around 3:30 a.m. and uncovered the compact case, violated his right to be free from unreasonable searches. LaMunion further asserts that the facts of his case do not fall into any of the exceptions to the exclusionary rule.[5]

The State first[6] counters that the police were responding "to a 9–1–1 call LaMunion placed himself," thus implying that he consented to the search. The State next contends that the warrantless search was proper as part of the overall crime scene investigation. On a related note, the State asserts that exigent circumstances existed. Finally, the State claims that the timing of the signature did not make the warrant invalid or the search illegal because "probable cause existed and the judge or magistrate intended to issue the warrant."

The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent a showing that the trial court abused its discretion. *Johnson v. State*, 710 N.E.2d 925, 927 (Ind.Ct.App.1999). We will neither reweigh the evidence nor judge witness credibility. *Id.* Our federal and state constitutions prohibit warrantless entry into a person's home for the purpose of arrest or search. *See* U.S. CONST. amend. IV; IND.CONST. art. 1, § 11.[7] There are, however, certain narrowly drawn exceptions to the warrant requirement. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

One of the established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *see also Harper v. State*, 474 N.E.2d 508, 512 (Ind.1985). "When the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that the State demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *State v. Jorgensen*, 526 N.E.2d 1004, 1005 (Ind.Ct.App.1988). Whether valid consent was given is a question of fact to be determined from all the circumstances existing at the time of the search. *See Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. 2041.

---

5. In the alternative, LaMunion points out that the police searched for items not listed in the warrant that was eventually obtained, thus exceeding the warrant's scope. That is, the warrant permitted a search for "weapons, ammunition, casings, and any evidence pertaining to a homicide." The officer who found the compact admitted that no weapon or ammunition could fit in the compact. However, the officer justified his action by claiming he recognized the compact as drug paraphernalia and thus evidence pertaining to the homicide, since the 911 call indicated that the intruders were searching for drugs. In light of our conclusion that the search was

not performed pursuant to a warrant, this argument is moot.

6. Actually, the State first argued that LaMunion waived review of the issue because he failed to include a copy of the warrant in the record. However, we ordered a *writ of certiorari* for the relevant warrant. Shortly before oral argument, we received a copy of the warrant, which was issued at 4:57 a.m. and supposedly executed at 5:05 a.m. that same day.

7. LaMunion does not make a separate Indiana constitutional argument.

Here, neither LaMunion nor his girlfriend "manifest[ed] by word or deed [their] consent to the search" before it was performed. *See Jorgensen,* 526 N.E.2d at 1007. They clearly did not assist in the search, as neither was even present. LaMunion had been taken to the hospital, and his girlfriend had been taken to the police station. They did not inquire about the search's progress. They did ask their neighbor to call 911. However, this can hardly be acquiescence, let alone consent, to a full search of their home. *See Jorgensen,* 526 N.E.2d at 1006–08.

 The State cites, and we find, no authority for what it terms the "overall crime scene investigation" exception to the warrant requirement. We can only assume the State is referring to the exigent circumstances exception. Police officers may enter a home without a warrant to aid a person in need of assistance. *See Stewart v. State,* 688 N.E.2d 1254, 1257 (Ind. 1997). Further, "when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises." *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). "The need to preserve or protect life justifies what would otherwise be illegal if exigency or emergency did not exist." *Green v. State,* 575 N.E.2d 296, 299 (Ind.Ct.App.1991), *trans. denied.* Officers have an interest in assuring themselves that the home is "not harboring other persons who are dangerous and who could unexpectedly launch an attack." *Maryland v. Buie,* 494 U.S. 325, 333, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Hence, law enforcement officers may make a cursory inspection of those spaces where a person may be found to secure the crime scene and ensure their safety. *Id.* Furthermore, police officers may seize any evidence that is found in plain view during their protective sweep. *Id.*

In the instant case, the police received a call that LaMunion had shot one of several intruders who had broken into his home looking for drugs to steal. When the various officers arrived between 12:50 a.m. and 1:30 a.m. at LaMunion's home, they quickly took control of the situation. The body was located; a protective sweep was performed; LaMunion was sent to the hospital; his girlfriend was taken to the station; a deputy was sent to obtain a warrant; and a couple of officers waited at the home for the warrant. The procurement of any evidence found in plain view during the initial cursory protective search of the crime scene did not violate LaMunion's Fourth Amendment rights despite the lack of a warrant. *See Mincey,* 437 U.S. at 392, 98 S.Ct. 2408; *Buie,* 494 U.S. at 333, 110 S.Ct. 1093. However, by 3:30 a.m., when the extensive warrantless search was started, LaMunion's home had been secure for a long period of time. Accordingly, that same securing-the-crime-scene/exigent circumstances rationale did not justify that search. *See Mincey,* 437 U.S. at 393, 98 S.Ct. 2408 (noting that "a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation'") (quoting *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *see also Thompson v. Louisiana,* 469 U.S. 17, 22, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984) (holding that although seizure of evidence found in plain view during the limited "victim-or-suspect" search would have been appropriate, the "victim-or-suspect" search had been completed at the time investigators arrived, and therefore evidence obtained during warrantless search was inadmissible).[8]

 In support of its argument that the timing of the signature of the warrant did not make the search illegal because

---

**8.** We are unconvinced by the argument that exigent circumstances existed that night in the form of a snowstorm and LaMunion's lack of a phone. Any implication that the officers at LaMunion's home could not communicate with the station to determine whether the warrant had been obtained is belied by the fact that the police radio was functional.

probable cause existed and the judge intended to issue the warrant, the State cites *Cutter v. State,* 646 N.E.2d 704, 712 (Ind. Ct.App.1995), *trans. denied,* and *State v. Smith,* 562 N.E.2d 428, 429 (Ind.Ct.App. 1990). We distinguish both cases. In *Cutter,* the police sought and obtained a telephonic search warrant. 646 N.E.2d at 707–09. After the warrant was served and the search conducted, it was discovered that the testifying officer had not signed the transcript and that the issuing judge had not certified the tape. *Id.* at 709. The oversights were later corrected, and we concluded that no reversible error occurred. *Id.* at 707–13. In *Smith,* a judge held a hearing, determined there was probable cause, and signed the original search warrant. 562 N.E.2d at 429. The police then served an unsigned copy of the warrant on the defendant and conducted a search. *Id.* A trial court later granted a motion to suppress the evidence found during the search because the copy of the warrant that was served was unsigned. *Id.* We reversed, concluding that the signature of the issuing judge is a ministerial act, the omission of which does not invalidate a warrant where the issuing judge found probable cause and intended to issue the warrant. *Id.* at 429–30. Here, in contrast, the search was started before any warrant was obtained. That is, the officers searched LaMunion's home before any judicial officer had made a probable cause determination. In doing so, the officers violated LaMunion's Fourth Amendment rights.

▪ Although not entirely clear from its brief, the State may also be claiming inevitable discovery. That is, even if the search was invalid as a violation of LaMunion's right to be free from unreasonable searches and seizures, the compact and drugs eventually would have been found through the lawful means of the search warrant that the judge issued at 4:57 a.m. However, this theory does not save from exclusion the evidence obtained during the invalid search. We addressed a very similar argument in *Jorgensen* and concluded, "[w]ere this the rule, no warrantless search supported by probable cause would be invalid." 526 N.E.2d at 1008. We explained:

> In *Nix v. Williams,* [467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ], statements made by the defendant which led police to the victim's body were tainted as the product of an illegal interrogation. The court held that if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received. *Id.* at 444, 104 S.Ct. at 2509. In *Nix,* the government had shown that the volunteer search party looking for the victim had come within a short distance of the body and inevitably would have discovered it, allowing admission of evidence of the body's discovery and condition.
>
> Accordingly, our courts have held that the "fruit of the poisonous tree" doctrine has no application when the derivative evidence would inevitably have been discovered. *Herald v. State* (1987), Ind. App., 511 N.E.2d 5, 8. Derivative evidence secured as a result of information and leads obtained from an illegal search constitutes fruit of the poisonous tree. *Id.*
>
> The evidence found in Vonda's house was not derivative evidence; rather it was itself the product of the illegal search. Therefore, the taint may not be removed even though this same evidence would have been discovered through lawful means.
>
> The trial court did not commit error in ordering the evidence suppressed which was the product of the illegal warrantless search.

*Id.* (footnote omitted). Likewise, the compact case was not derivative evidence, but was itself the product of the illegal search. Consequently, the taint may not be re-

moved even though this evidence would have been discovered through lawful means.

The State also points out that the officer who found the compact case was under the mistaken impression that the warrant had already been obtained. If the State means to argue the good faith exception, it does not apply here because, as mentioned above, there was no warrant—deficient or otherwise—at the time the search was conducted. *See Cutter*, 646 N.E.2d at 714–15 (citing IND.CODE § 35–37–4–5 and noting that information obtained "pursuant to an invalid search warrant is admissible if the officers executing the warrant acted in good faith" reliance upon the warrant).

In summary, the extensive search, which began at 3:30 a.m. and uncovered the compact case, violated LaMunion's Fourth Amendment rights. No valid exceptions to the exclusionary rule apply. Accordingly, the trial court should have granted the motion to suppress.

Reversed.

NAJAM, J., and VAIDIK, J. concur.