**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TERI A. FLORY**
Flory and Smith, Attorneys at Law
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL TONEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1209-CR-471 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1110-FA-20

**May 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Michael Toney appeals his convictions and sentence for dealing in methamphetamine as a class A felony, possession of a firearm by a serious violent offender as a class B felony, and his status as an habitual offender. Toney raises five issues which we consolidate and restate as:

I. Whether the trial court abused its discretion by admitting evidence obtained pursuant to a search;

II. Whether the court abused its discretion in sentencing Toney.[1]

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

On September 28, 2011, West Lafayette Police Officer Jonathan Morgan obtained information that arrest warrants from White County and Pulaski County for Toney existed. The White County Sheriff's Office gave Officer Morgan an address at which they believed Toney was staying with his girlfriend, and Officer Morgan met with the Lafayette Street Crimes Unit and updated them with that information and photographs of Toney.

Officer Morgan and other officers then drove to the address where they believed Toney was staying. Officer Morgan and Officer Michael Barthelemy went to the front of the house, and Officer Morgan knocked on the front door. Officer Morgan observed

---

[1] Toney argues that "[i]t was inconsistent for the jury to find Toney guilty of possessing a handgun, but not guilty of possessing a shotgun, when both firearms were located under the same mattress, and then to further find Toney guilty of possessing that same shotgun as a serious violent felon." Appellant's Brief at 1. The Indiana Supreme Court has held that "[j]ury verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable." Beattie v. State, 924 N.E.2d 643, 648 (Ind. 2010).

Toney also argues that his sentence is inappropriate in light of the nature of the offense and his character. Because we remand for resentencing on other grounds, we need not address this argument.

2

someone lift some window blinds a little bit, peek outside, and then close the blinds immediately.

Lafayette Police Detective Chad Robinson, who was positioned outside the fence in the backyard, radioed that he observed someone inside the residence matching Toney's description and that the man was shirtless. Officer Morgan went to Detective Robinson, and Detective Robinson confirmed that the person inside matched the description of a photograph of Toney. Officer Morgan then returned to the front door and continued to knock.

Penny Ausmanson eventually opened the door and started to walk outside, and Officer Barthelemy ushered her to the driveway. Officer Morgan explained to her why they were there and asked her several times if he could go inside to check for Toney, and she did not respond. Officer Morgan then saw an individual exit a hallway and enter the living room. At this time, the individual was wearing a pair of shorts and a hooded sweatshirt with the hood pulled over his head which partially covered his face, and his hands were in the pocket of the sweatshirt.

Officer Morgan yelled Toney's name, and the individual "just pretty much stood motionless." Trial Transcript at 20. Officer Morgan was concerned that the individual might be concealing something and asked him to show his hands. After asking the individual several times to remove his hands from his pockets, Officer Morgan knew that the individual was Toney and went inside and took him into custody. As Officer Morgan went inside and placed Toney in handcuffs, the other officers came in behind him and performed a protective sweep as they were concerned that they had already observed one

3

person inside wearing sweatpants and no shirt. Specifically, Officer Barthelemy went in behind Officer Morgan concerned for their safety based on the individual's actions with his hands. Officer Daniel Long also entered the house, observed that the officers' backs faced two rooms that had not been checked, and told Officer Barthelemy that they needed to "clear the house." Id. at 49. Officer Barthelemy "wasn't exactly sure if [the individual] was Mr. Toney or not because he was partially – his face was partially concealed. And he wouldn't acknowledge who he was." Id. at 33. Officer Barthelemy and Officer Long performed a safety sweep of the house by "walking through quickly to make sure there [was] no one else hiding inside." Id. During the protective sweep, Officer Barthelemy "was hit with a strong chemical type smell that was just overwhelming," which he knew from past experiences was probably a meth lab. Id. at 34. Officer Long entered a bedroom, saw what appeared to be the grip of a gun of some type sticking out between two mattresses, and he lifted the mattress because people have been known to hide between mattresses and Officer Long had previously found someone hiding in a mattress. A handgun and a sawed-off shotgun were under the mattress. The officers then exited the house.

Officer Barthelemy spoke with Ausmanson, asked if she would give consent to search, told her to think about it, went to his car, and retrieved an advice of rights consent to search form. Officer Barthelemy read the form to her, and Ausmanson signed the form. Officer Morgan entered the residence again and observed a couple of mason jars that had some clear liquids in them, a can of Coleman fuel, coffee filters, smoking pipes, "aluminum foil canoes," which Officer Morgan knew people used to ingest drugs such as

4

methamphetamine and heroin, a propane tank, which is used in meth labs, meth pipes, rubber tubing, very small Ziploc bags, and other paraphernalia. Id. at 23.

On October 4, 2011, the State charged Toney with Count I, dealing in methamphetamine as a class A felony; Count II, possession of methamphetamine as a class B felony; Count III, possession of an illegal drug lab as a class C felony; Count IV, possession of an illegal drug lab as a class C felony; Count V, dealing in a sawed-off shotgun as a class D felony; Count VI, possession of a schedule II controlled substance as a class C felony; Count VII, possession of a schedule III controlled substance as a class C felony; Count VIII, possession of a schedule IV controlled substance as a class C felony; Count IX, possession of paraphernalia as a class A misdemeanor; Count X, serious violent felon in possession of a firearm as a class B felony; and Count XI, serious violent felon in possession of a firearm as a class B felony.[2] The State also alleged that Toney was an habitual offender.

On April 16, 2012, Toney filed a motion to suppress "all evidence" which stated that "the police had no search warrant, only an arrest warrant," "assuming *arguendo* police had a search warrant or exigent circumstances that the manner of the police search went beyond the permissible scope of entry onto private property," and "assuming *arguendo* that entry into the residence was constitutional the search and manipulation of any firearms was beyond the scope of a protective sweep and was to done [sic] with

___

[2] The State initially listed the charges of serious violent felon in possession of a firearm as class B felonies as Counts V and VI. These charges were reclassified as Counts X and XI for purposes of the jury trial. For purposes of simplicity, the counts mentioned in this opinion are listed as those that were tried to the jury and that are used in the trial court's sentencing order.

warrant." Appellant's Appendix at 70. After a hearing, the court denied Toney's motion to suppress on June 5, 2012.

Beginning on August 7, 2012, the court held a jury trial on Counts I through IX. After the State rested, Toney's counsel moved for a judgment on the evidence, and the court denied the motion. The jury found Toney guilty of Counts I, II, III, IV, VI, VII, and IX. The jury then heard evidence regarding Count X, possession of a firearm as a serious violent felon as a class B felony, and Count XI, possession of a firearm as a class B felony, and found Toney guilty as charged. The court then found Toney guilty of being an habitual offender.

The court noted that Toney had two felonies pending and one other case that was dismissed, and found the following aggravating circumstances: Toney's history of illegal use of alcohol and drugs, his Indiana Risk Assessment Score which was in the high range of likelihood to re-offend, his failure to take responsibility for his actions, and the fact that he was on bond on two other crimes at the time he committed the current offenses. The court sentenced Toney to forty years for Count I, dealing in methamphetamine as a class A felony, twenty years for Count X, possession of a firearm by a serious violent offender as a class B felony, and thirty years for being an habitual offender. The court ordered that the sentences be served consecutive to each other for an aggregate sentence of ninety years.

DISCUSSION

I.

The first issue is whether the trial court abused its discretion by admitting evidence obtained pursuant to the search. Although Toney originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. See Jefferson v. State, 891 N.E.2d 77, 80 (Ind. Ct. App. 2008), trans. denied; Lundquist v. State, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005).

We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. Roche v. State, 690 N.E.2d 1115, 1134 (Ind. 1997), reh'g denied. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied.

Toney argues that there were no articulable facts that would cause a reasonably prudent officer to believe that a third person was present in the home as Toney was positively identified by separate officers in both outfits. He contends that the protective sweep revealed "items of contraband" and that "[h]ad the protective sweep not been conducted, there would have been no reason to search the home, and the items would not have been located." Appellant's Brief at 16. Toney also contends that "[i]f this Court

7

finds the protective sweep was proper, the lifting of the mattress far exceeded the scope allowed under the warrant exception." Id.

The State argues that "while Toney challenges the legality of the protective sweep, no evidence was obtained during the protective sweep." Appellee's Brief at 13. The State contends that "[a]ll the evidence obtained and admitted at Toney's trial was obtained and admitted after Ausmanson consented to the search of her residence." Id. The State argues that the protective sweep is irrelevant because law enforcement obtained no physical evidence from the sweep and the physical evidence would have inevitably been obtained pursuant to Ausmanson's consent. The State also argues that the protective sweep of Ausmanson's residence was proper because officers had an arrest warrant for Toney and Toney was nonresponsive to the officers' commands.

The Fourth Amendment to the United States Constitution provides, in pertinent part: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. The Fourth Amendment's protection against unreasonable searches and seizures has been extended to the states through the Fourteenth Amendment. See Berry v. State, 704 N.E.2d 462, 464-465 (Ind. 1998). Generally, searches should be conducted pursuant to a warrant supported by probable cause. Purdy v. State, 708 N.E.2d 20, 22 (Ind. Ct. App. 1999). As a general rule, warrantless searches and seizures inside the home are presumptively unreasonable. Primus v. State, 813 N.E.2d 370, 374 (Ind. Ct. App. 2004). Consequently, when a search is conducted without a warrant, the State has

8

the burden of proving that the search falls into one of the exceptions to the warrant requirement. Berry, 704 N.E.2d at 465.

A valid consent to search is an exception to the warrant requirement unless it is procured by fraud, duress, fear, or intimidation, or where it is "merely a submission to the supremacy of the law." Melton v. State, 705 N.E.2d 564, 567 (Ind. Ct. App. 1999). "When the State seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was, in fact, freely and voluntarily given." Lyons v. State, 735 N.E.2d 1179, 1185 (Ind. Ct. App. 2000), trans. denied. In determining whether consent was valid, we must consider the totality of the circumstances. Melton, 705 N.E.2d at 567; see also State v. Jorgensen, 526 N.E.2d 1004, 1006 (Ind. Ct. App. 1988) ("The Supreme Court . . . declined to place a burden on the State to show that it had informed the person of his right to refuse consent, or that the person knew he could refuse consent. Rather, whether valid consent was given is a question of fact to be determined from all the circumstances existing at the time of the search.") (citing Schneckloth v. Bustamonte, 412 U.S. 218, 248-249, 93 S. Ct. 2041, 2058-2059 (1973)). Express consent is not a requirement for a valid consent search, and "[t]he circumstances surrounding the search may demonstrate that the party involved implicitly gave consent, by word or deed." Melton, 705 N.E.2d at 567-568 (quoting Jorgensen, 526 N.E.2d at 1006). However, "the failure to protest a search does not, in itself, constitute consent." Id. at 568 n.1. A third party can give consent to the search of the premises if he has actual or apparent authority. Hill v. State, 825 N.E.2d 432, 436 (Ind. Ct. App. 2005). "Under the apparent authority doctrine, a search is lawful if the facts available to the officer at the

time would cause a person of reasonable caution to believe that the consenting party had authority over the premises." Primus, 813 N.E.2d at 374-375.

While Toney focuses on the validity of the protective sweep, we conclude that the consent given by Ausmanson is dispositive of this issue. The record reveals that Officer Barthelemy spoke with Ausmanson, asked if she would give consent to search, told her to think about it, went to his car, retrieved an advice of rights consent to search form, read the form to her, told her that she had the legal right to cooperate or not as she saw fit, and Ausmanson signed the form. Toney does not argue that Ausmanson did not have actual or apparent authority to consent to a search of the residence. Under the circumstances, we cannot say that the trial court abused its discretion in admitting the evidence obtained from the search. See Shultz v. State, 742 N.E.2d 961, 965 (Ind. Ct. App. 2001) (holding that the initial illegal search for the VIN was of no consequence under Fourth Amendment jurisprudence alone and that the partial VIN and all the remaining evidence would have been inevitably and lawfully discovered in the execution of the search warrant), reh'g denied, trans. denied.

## II.

The next issue is whether the court abused its discretion in sentencing Toney. Toney argues that the trial court abused its discretion and violated Ind. Code § 35-50-1-2 because Counts I and X arose out of the same episode of criminal conduct and cannot exceed the advisory sentence of fifty-five years for murder, a felony which is one class higher than a class A felony. The State argues that Toney's crimes of dealing in methamphetamine and possession of a firearm as a serious violent felon do not comprise

10

an episode of criminal conduct.  The State also argues that because of the intricacies of

the chemical process involved in manufacturing methamphetamine, it can be inferred that

Toney was dealing methamphetamine well before he acquired the firearms which

matched the description of two firearms that were stolen in the White County case.

Ind. Code § 35-50-1-2(c) provides:

[E]xcept for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

An "episode of criminal conduct" "means offenses or a connected series of

offenses that are closely related in time, place, and circumstance."  Ind. Code § 35-50-1-

2(b).  The Indiana Supreme Court has held:

[T]his Court has said, "[t]he issue is whether 'the alleged conduct was so closely related in time, place, and circumstances that a complete account of one charge cannot be related without referring to details of the other charge.'" O'Connell v. State, 742 N.E.2d 943, 950-51 (Ind. 2001) (quoting Flynn v. State, 702 N.E.2d 741, 748-49 (Ind. Ct. App. 1998); Tedlock[ v. State, 656 N.E.2d 273, 276 (Ind. Ct. App. 1995)]).  However, this is a bit of an overstatement.  We are of the view that although the ability to recount each charge without referring to the other can provide additional guidance on the question of whether a defendant's conduct constitutes an episode of criminal conduct, it is not a critical ingredient in resolving the question. Rather, the statute speaks in less absolute terms: "a connected series of offenses that are closely connected in time, place, and circumstance."  I.C. § 35-50-1-2(b).  And as we have observed, "Tedlock emphasizes the timing of the offenses" and "refers to the 'simultaneous' and 'contemporaneous' nature of the crimes which would constitute a single episode of criminal conduct." Smith v. State, 770 N.E.2d 290, 294 (Ind. 2002) (citing Tedlock, 656 N.E.2d at 276).

Reed v. State, 856 N.E.2d 1189, 1200 (Ind. 2006).

11

The record reveals that Detective Robinson testified that he provided information from the firearms recovered from the residence to dispatch "in order for them to run the weapon through the system to check for stolen or other issues that may be associated with the gun." Trial Transcript at 225-226. Dispatch indicated that the firearms were "possibly reported stolen from White County in a case in which Mr. Toney was the primary suspect."[3] Id. at 226. However, the State does not point to the record and our review of the record does not reveal any evidence related to when the firearms were stolen or when Toney received the firearms. Moreover, the shotgun and evidence related to the methamphetamine were discovered at the same time and in the same residence.

Based upon the facts of this case, we conclude that Toney's offense of possession of a firearm by a serious violent offender and act of dealing in methamphetamine constituted a single episode of criminal conduct. See Massey v. State, 816 N.E.2d 979, 991 (Ind. Ct. App. 2004) (holding that the defendant's convictions arose from a single episode of criminal conduct where the defendant was a serious violent felon in possession of a handgun and simultaneously was in possession of such a large amount of cocaine that his intent to deal could be inferred).[4] Thus, we conclude that the trial court erred

---

[3] During cross-examination, Detective Robinson stated: "Yeah the preliminary information was that the weapons matched that – [I] think that there were multiple additional weapons that were stolen in the same instance – same burglary but those two weapons specially matched two of the weapons in which were stolen in that [W]hite county case." Trial Transcript at 228-229. When asked to clarify whether he was able to confirm the firearms were stolen, Detective Robinson stated: "Well dispatch they don't give – they give information that yeah those are listed as possibly stolen and then follow-up beyond that it goes beyond me is that investigation into the guns." Id. at 229. During redirect examination, Detective Robinson indicated that if something is reported as stolen law enforcement treats the item as possibly stolen.

[4] We acknowledge Deshazier v. State, 877 N.E.2d 200 (Ind. Ct. App. 2007), trans. denied, which is cited by the State. In Deshazier, the defendant struggled with police officers, managed to escape after an officer ripped off the defendant's jacket, and ran from the scene. 877 N.E.2d at 203. Another panel of

12

when it ordered that Toney serve consecutive sentences of forty years for Count I, dealing in methamphetamine as a class A felony, and twenty years for Count X, possession of a firearm by a serious violent offender as a class B felony, because the total of the consecutive terms of imprisonment, which was sixty years in this case, cannot exceed fifty-five years, the advisory sentence for the next highest class of offense, murder. We therefore reverse and remand for resentencing. See Coleman v. State, 952 N.E.2d 377, 383 (Ind. Ct. App. 2011) (holding that the defendant's sentence could not exceed fifty-five years, the advisory sentence for the next highest class of offense, murder, and remanding for resentencing).

We also *sua sponte* observe that the trial court erroneously entered a separate thirty-year sentence for the habitual offender finding to be served consecutive to the sentences for Counts I and X. See Comer v. State, 839 N.E.2d 721, 726 (Ind. Ct. App. 2005) (holding that it is our duty to correct sentencing errors, *sua sponte*, if necessary), trans. denied; see also Logan v. State, 729 N.E.2d 125, 136 (Ind. 2000) (*sua sponte* addressing the trial court's error in sentencing defendant). It is well settled that a habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence. See Ind. Code § 35-50-2-8. Rather, a habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony. Hendrix v. State, 759 N.E.2d 1045, 1048 (Ind. 2001). Here, the court's order stated: "IT IS

this court held: "Although the marijuana was in Deshazier's jacket while he resisted the officers, we do not find this fact to bring his act of possession into the same episode of conduct as his resistance." Deshazier, 877 N.E.2d at 212-213. The panel concluded that the defendant's possession of the handgun and marijuana were not closely related in time, place, and circumstance to his acts of resisting arrest. Unlike in Deshazier where the two offenses included a possession offense and a resisting arrest, here the two offenses relate to possession. Thus, we find this case more akin to Massey, supra, and distinguishable from Deshazier.

FURTHER ORDERED AND ADJUDGED that the defendant be and hereby is sentenced to the custody of the Indiana Department of Correction for a period of thirty (30) years for the crime of being an Habitual Offender. IT IS FURTHER ORDERED AND ADJUDGED that the counts run consecutively." Appellant's Appendix at 181. While the abstract of judgment indicates that Count XII, the habitual offender allegation, and Count X, should be served consecutive to Count I, the abstract lists a separate sentence for Count XII and does not specifically attach the habitual offender enhancement to either Count I or Count X. Thus, we conclude that the court abused its discretion when it ordered that the habitual offender enhancement be served consecutive to the sentences for Counts I and X. Accordingly, we remand for resentencing on the habitual offender finding as well.

For the foregoing reasons, we affirm Toney's convictions and reverse and remand for resentencing.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and BRADFORD, J., concur.