BRADFORD, Judge,
concurring in part, concurring in result.
I concur with the majority that the trial court abused its discretion in admitting the challenged evidence, i.e., the security tape from the Speedway store located in Greenfield, at trial. However, I write separately to reiterate that I believe that the inevitable discovery rule could apply under both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution if the State were to demonstrate by a preponderance of the evidence that the challenged evidence would have been discovered but for the unlawful search. The State, however, failed to do so here.
In Clark v. State, 994 N.E.2d 252, 272 (Ind.2013), the Indiana Supreme Court recognized an exception to the exclusionary rule, holding that evidence derivative of an unlawful search need not be excluded if it would inevitably have been obtained. The purpose of this exception is that exclusion of the derivative evidence “ ‘would put the police in a worse position than they would have been in absent any error or violation and the deterrence basis of the exclusionary rule would be lost.’ ” Clark, 994 N.E.2d at 272 (quoting Nix v. Williams, 467 U.S. 431, 443-44, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). The State bears the burden of proving by a preponderance of the evidence that the inevitable discovery exception applies. Id.; LaMunion v. State, 740 N.E.2d 576, 581 (Ind.Ct.App.2000) (citing Nix, 467 U.S. at 444, 104 S.Ct. 2501).
Sarah Whitmer, the primary card holder for the Discover card in question, testified *1139 that she reviewed her paper bill every month to check that her purchases were accurately reflected. She further testified that upon noticing the unauthorized charges, she' would have notified Discover and disputed the unauthorized charges. The State, however, failed to prove by a preponderance of the evidence that Whit-mer’s potential act of notifying Discovery of the unauthorized charges would have led to the inevitable discovery of the challenged evidence.
William McNally, the Midwest Field In-' vestigator for Discover, testified that but for the notification of the potential fraud from Detective Ralston,[3] notification of the unauthorized charges from Whitmer would first have gone to the Phoenix Fraud Center. (Tr. 221) If the Phoenix Fraud Center determined that there was a large enough case of potential fraud, it may have notified McNally, who may have contacted law enforcement. (Tr. 221) Further, nothing in the record indicates that Brian Sei-fert, a corporate fraud investigator for Speedway Corporation, would have taken the steps necessary to save the challenged evidence absent the phone call he received from Detective Ralston reporting a potential occurrence of fraud in the Greenfield Speedway store. When questioned about the catalog life of the challenged evidence, Seifert’s testimony was uncertain. Seifert acknowledged that hard drives “only have so much storage space, whether that be ninety days, one hundred eighty days, et-cetera, it tapes over the oldest data in the hard drives.” Tr. p. 229. When asked directly “[h]ow long it would have taken for that section of video to be recorded over,” Seifert responded, “I don’t know.” Tr. p. 229.
In light of the uncertainty in McNally’s and Seifert’s testimony, any determination that the challenged evidence would inevitably have been discovered is based on súp-position and, as such, cannot support a finding to that effect by a preponderance of the evidence. Accordingly, I agree with the majority’s determination that the trial court abused its discretion in admitting the challenged evidence at trial and concur with the conclusion to reverse Gyamfi’s convictions.

. It is undisputed that Detective Ralston initiated his investigation after receiving a file of information collected by Officer Harves shortly after he conducted the unlawful séarch in Boone County.